U. G. CHARLES, as Guardian, etc., *Appellee*, v. GUSTAV WITT et al. (Gustav Witt, *Appellant*).

No. 17,883.

SYLLABUS BY THE COURT.

1. GUARDIAN AND WARD—*Action for Accounting—Mismanagement of Ward's Estate.* In an action on behalf of minors against their former guardian for an accounting allegations of fraud, of waste and mismanagement, of wrongful appropriation of the minors' property by pasturing their lands, and of purchasing their grain at less than its value are mere matters of inducement, where the petition as a whole shows that all that is demanded is an accounting. Wrongful or tortious acts of the guardian may be waived and he may be compelled to account for the reasonable value of the property wasted or wrongfully appropriated. There still remains but a single cause of action for an accounting.

2. ——— *Measure of Recovery Where Guardian Has Failed to Keep Accounts.* Where a guardian for a period extending over

Charles v. Witt.

several years without an order of the probate court leases the lands of the minors for grain rent, and purchases their grain himself, keeping the accounts in such an imperfect and unintelligible manner that in an action for an accounting it is found impossible to ascertain what amount of grain was received for the minors' share or raised on their lands, it is proper to charge him with the cash rental value of their lands for the whole period.

3. ———— *Interest on Yearly Balances.* And in such case where the evidence likewise shows other instances of culpable neglect of the minors' interests and of fraud in the management of their estate, the allowance of interest at six per cent on the yearly balance found due, the interest to be added yearly to the principal, will be upheld.

4. ———— *Wards Entitled to Judgment against Guardian for Whole Amount Due.* When the sureties of the guardian are parties to such an action and the petition asks judgment for the amount of the bond and the court finds a larger sum due from the guardian, the court should permit the petition to be amended to conform to the evidence and should render judgment against the guardian for the whole amount found due the wards.

5. ———— *Guardian—Must Act Only Under Direction of Probate Court.* Guardians are required to manage the interests of their wards under the direction of the probate court (Gen. Stat. 1909, § 3975), and may lease the lands of the wards or loan their money, but can do so lawfully only under the direction of the court.

6. ———— *Final Settlement—Who is Also Guardian Not Conclusive as to Minors.* The final settlement of an administrator who at the same time is guardian of minors interested in the estate is not conclusive upon the minors but is voidable by them or by their representative.

7. Guardian — *Trading with Himself — Violation of Duty.* A guardian may not trade with himself on account of the ward or use or deal with his ward's property for his own benefit.

8. Counter Abstract—*Costs Taxed to Appellee.* That portion of the cost of printing a counter abstract found to be unnecessary is taxed to the appellee.

Appeal from Stafford district court.    Opinion filed January 11, 1913.    Modified.

*F. L. Martin,* and *Van M. Martin,* both of Hutchinson, and *T. W. Moseley,* of St. John, for the appellant.

*Paul R. Nagle,* of St. John, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant, Gustav Witt, was guardian of the persons and estates of Theodore and Hulda Witt, minors, from the time of his appointment in 1895 until his removal by the probate court of Stafford county in 1908, when U. G. Charles was appointed guardian. This is a suit by Charles on behalf of the minors against the former guardian and his sureties for an accounting, setting up fraud in annual settlements, misappropriations of funds and waste and mismanagement of the property. The case was sent to a referee, who found the facts and law against the former guardian. The court approved the report and rendered judgment accordingly, from which Gustav Witt appeals.

There was a long trial before the referee and a great mass of evidence was taken covering a multitude of transactions, some of which involved the administration of other estates, and necessarily the findings of fact are voluminous. We shall state as briefly as possible the substance of the findings which are deemed necessary to an understanding of the real controversy.

Mary L. and Edward Witt were married in Indiana in 1875. They removed to Texas in 1885, and in the same year Edward died intestate, leaving his widow and two children, Emma and Ida Witt, as his only heirs at law. The widow was appointed administratrix and trustee, and her management of his estate is indirectly involved here and will be mentioned later.

In the spring of 1887 Mary L. Witt returned to Indiana and in November married Theodore J. Witt, brother of her first husband. They came soon afterwards to Stafford county, Kansas, and two children were born to them, Theodore and Hulda Witt, in whose behalf this

action is brought.  Theodore J. died December 16, 1894, leaving his widow and these minors as his only heirs. He left a will devising to the two children one-half of his real estate and to the widow all the personal estate, stating in the will that under the law she would take the other half of the real estate.  Mary L. Witt, the widow, died four days after her husband, intestate, and leaving as her only heirs at law Emma and Ida Witt, children by her first husband, and Theodore and Hulda by the second marriage.

The will of Theodore J. Witt named Mary L. Witt as executrix.  It was admitted to probate in Stafford county, but no further proceedings were had or taken under it.  At the time of his death Theodore J. Witt was the owner of 532 acres of farm land in Stafford county, about 460 acres cultivated and the remainder in pasture.  His brother, Gustav Witt, owns and lives on land adjoining.

On January 12, 1895, Gustav was appointed by the probate court administrator of the estate of Mary L. Witt, and qualified as such, and on the same day was appointed guardian of the persons and estates of both sets of children.  The children of Edward Witt are not parties to this action and have no interest in the controversy; but it appears that as administrator of the estate of Mary L. Witt, Gustav received what is referred to in the findings as the Texas mortgage for $4000 in which a portion of the proceeds of the estate of Edward Witt, deceased, had been invested by Mary L. Witt in her capacity as administratrix.  In her application to the probate court of Bexar county, Texas, for such appointment she set out property amounting to about $5500, which she represented to be community property.  There was in force in that state a community-property law and the Texas court adjudicated the property left by Edward Witt to be that kind of property.  No report or settlement of the community estate was ever made by her in the Texas court.

The will of Theodore J. Witt was not filed for probate until after the death of Mary L. Witt. She was sick at the time of his death, and she made no election under the will and there is no evidence that she had any knowledge of the existence of the will. As administrator Gustav Witt received the proceeds of the lands for the year 1894 and the personal property, including the Texas mortgage for $4000. He rendered his first account as administrator in January, 1896, his second in January, 1897, and his final account a year later, when he was discharged as administrator. In these settlements there was no person to represent the minors but himself as their guardian. He acted in the double capacity of administrator and guardian and the settlements were made without notice to the minors. As guardian he never applied to the probate court for an order to lease his wards' land or to loan or invest their funds, and no such order was ever made.

From 1895 to 1907, inclusive, he leased the lands as guardian for grain rent, but the referee finds that he kept no account of such grain rent when it was gathered or threshed, and that the partially kept accounts of such grain rent when it was sold "were kept by various parties on inside of cover of account books and in pocket memorandum books in pencil and in such an imperfect and unsatisfactory and unintelligible manner that it is impossible to tell from the evidence what amount of grain rent was received by Hulda Witt and Theodore Witt, minors, or how much grain was raised on said land."

The evidence shows that in 1898 Gustav Witt, in addition to farming the place where he lived, engaged in the grain business and kept an elevator and a store. From that time on he purchased the grain raised on the wards' lands, including their shares. The tenants would deliver grain to the elevator, and take the scale tickets to the store, where a daughter or some member

of Gustav Witt's family would credit the tenant with
two-thirds.  The balance was understood by everybody
to belong to the wards, but no accurate account was
kept, and it was the custom to destroy the scale tickets
at the end of one year.  On the trial it was found prac-
tically impossible for Gustav Witt to show the amount
of grain rent received from the lands.  The cattle and
live stock owned by the guardian were frequently kept
on the pasture lands of the wards and his cattle at
times were allowed to eat and destroy grain in stacks
which was raised on their lands.  The referee finds
that it was impossible to ascertain the amount of dam-
ages which the estate thereby sustained.

As guardian he filed annual accounts up to 1902.  In
1905 his account attempted to give the receipts for
rent in a lump sum for three years.  In 1907 an account
was rendered for two years.  In 1908 the probate court,
after an investigation of his entire account, removed
him as guardian and appointed U. G. Charles in his
place.  In the inventory as administrator he charged
himself with the $4000 Texas mortgage.  In his first
account as administrator he claimed that only $1250 of
this belonged to the estate and that $2750, or two-thirds
of the mortgage, belonged to the children of Edward on
the theory that no part of the property ever was com-
munity property.  At the time he was appointed guard-
ian Theodore Witt was five and Hulda was less than
three years old.  The minors were taken into the family
of the guardian and in his accounts he charges them
for their board and clothing.  From the time Theodore
was ten he worked on the farm, and the referee finds
that from 1900 to 1902 the labor performed by him for
the guardian was sufficient to pay for his board and
clothing, and that his services from 1903 to 1907, in-
clusive, were reasonably worth $100 a year and board.
Hulda was required to work not only in the house but
in the fields.  The evidence is that she began doing

work at nine years of age. From the age of about twelve until she left the guardian's home, when sixteen, she performed all kinds of field work; she plowed, raked hay, pulled broom corn, sledded ridges, chopped cornstalks, herded cattle, and worked in the elevator dump. She was required to do such work as plowing for neighbors, her wages being paid to the guardian and never accounted for. Both children were kept from school a large part of each school year in order to work for the guardian. The referee finds that during 1906 and 1907 the services of Hulda were reasonably worth $75 per year and board. The referee in general terms found that the evidence established fraud in the management of the estates of the minors, and that the distribution made by the probate court of Stafford county at the settlement of Gustav Witt as administrator was not conclusive or binding upon the minors. The referee proceeded to restate the administrator's account and to correct the errors shown by the evidence. The account with each of the minors was likewise restated and charges and credits given in accordance with the findings and evidence.

As conclusion of law the referee held that the adjudication of the probate court in Texas is entitled to full faith and credit, and that court having adjudicated the property left by Edward Witt to be community property it vested the Texas property in Mary L. Witt, subject to payments of debts and to distribution among the heirs of Edward Witt. The will of Theodore was construed to vest all the personal property in Mary L. Witt; and it was held that upon her death Theodore and Hulda Witt became the owners of one-half of the personal property and that thereafter each owned three-eighths of the real estate. The referee held that the minors were entitled to interest at 6 per cent on the yearly balance found to be due, the interest to be added yearly to the principal; that the manner in which the guardian leased and man-

Charles v. Witt.

·aged the lands constituted a breach of trust; that by reason of his having failed to keep accurate accounts ·of the rents and profits, and because of the impossibility ·of determining the amount of damages or the amount of · rents or whether they had been accounted for, the referee charged him with the cash rental value of the interest of the minors in the lands from the time when he had assumed the right to manage and control the lands. The conclusions of law are clearly stated and ·cover all the issues. It is not deemed necessary to recite them in full.

The amount found due Theodore Witt on June 8, 1908, when the former guardian was removed, is ·$11,004.45, from which is deducted the sum of $3443.76 paid to the present guardian, leaving a balance due Theodore of $7581.67. The amount due Hulda Witt after deducting the payment to the present guardian was found to be $6870.56. The last conclusion of law by the referee is that plaintiff can only recover the amount alleged in the petition, which was $11,300, that being the aggregate amount of the two bonds executed by the guardian, and the referee held that this amount should be divided in proportion to the amounts found ·due each minor. The trial court rendered judgment as recommended. The defendant appeals generally; the appellee has a cross-appeal alleging error in denying an application to amend the petition, and in not rendering judgment as against Gustav Witt for the entire amount found due.

The errors of which appellant complains are for the most part purely technical. The petition does not show incapacity of plaintiff to maintain the action. The minors might have been named as plaintiffs suing by their guardian, but the petition clearly shows that the plaintiff sues for them in a representative capacity and not for himself. The statute (Gen. Stat. 1909, § 3975) requires him to prosecute and defend for the ward.

The objection is to form rather than substance and furnishes no ground for reversal. (*Hopkinson v. Conley,* 75 Kan. 65, 88 Pac. 549.) The petition states a cause of action and but one cause. The demurrer and the objection to evidence were rightly overruled. There was a succession of wrongs alleged, the common purpose of which was to detain moneys belonging to the minors. (*Klemp v. Winter,* 23 Kan. 699, 704, 705.) The action is one for an accounting. The district court had jurisdiction. (*Klemp v. Winter,* supra; *Mitchell v. Kelley,* 82 Kan. 1, 3, 107 Pac. 782; *Hawk v. Sayler,* 83 Kan. 775, 112 Pac. 602.)

There was no misjoinder of causes of action even under the strictness of the old code, in force when the original petition was filed and which had been superceded by the new code when the petition was amended. In an action on behalf of minors against a former guardian for an accounting allegations of fraud, of waste and mismanagement, of wrongful appropriation of the minors' property by pasturing their lands and purchasing their grain at less than its actual value are mere matters of inducement, where the petition as a whole shows that all that is demanded is an accounting and judgment for whatever sum may be due. Wrongful or tortious acts of the former guardian may be waived and he may be compelled to account for the reasonable value of the property wasted or wrongfully appropriated. There still remains but a single cause of action for an accounting. (*Klemp v. Winter,* supra.)

It is claimed that the finding that the guardian was guilty of fraud is too general, that the referee should have stated more in detail the acts and omissions which constituted fraud or breach of trust. We think the findings are sufficient in this respect. Some acts are shown which constitute fraud in fact; other acts and omissions are stated which the law declares constitute fraud irrespective of the intent or purpose. It is un-

necessary to recapitulate. It is doubtless true that the property and estate of the minors suffered far more from mismanagement than from willful misconduct of the guardian, but the evidence and findings show such culpable neglect of duty as to constitute a clear breach of trust.

The course adopted by the referee in charging the guardian with the cash rental value of the minors' interest in the lands was made necessary by the guardian's culpable neglect in failing to keep accounts with his wards. While it may seem to be a harsh rule and to work some hardship in this instance the principle upon which it is based is reasonable, and its application to the situation presented here meets with our approval. The fact that the petition contained no allegation as to the cash rental value of the lands and asked for no recovery on that basis is of no importance. It was an action for an accounting, and it became the duty of the court to determine what sums were due from the guardian.

The statute (Gen. Stat. 1909, § 3975) requires guardians to manage the interests of their wards under the direction of the court. The guardian may lease the lands of the wards or loan their money, but can do these things lawfully only under the direction of the probate court. A statute similar to ours has been construed to inhibit by implication the doing of these acts without an order of court. (*Easton v. Somerville,* 111 Iowa, 164, 82 N. W. 475.)

The allowance of compound interest against the guardian was not error. In *Gassell v. Gassell,* 147 Cal. 510, 82 Pac. 42, the guardian mingled the wards' funds with his own without any authority from the court, and failed to keep an account from which an accounting could be rendered. The court held that it was not error to charge him with compound interest although he was guilty of no fraud. This rule is ap-

plicable alike to guardians and executors as to other trust relations. (1 Church, New Probate Law and Practice, p. 204; *Guardianship of Dow,* 133 Cal. 446, 449, 65 Pac. 890, 892.)

The final settlement of the administrator, who was at the same time the guardian, was not conclusive or binding upon the minors, but voidable by them or by their representative. (2 Woerner, The American Law of Administration, 2d ed., § 505; *Alexander v. Alexander,* 70 Ala. 212.)

If authorities are needed to support the principle that a guardian can not trade with himself on account of the ward nor use or deal with his wards' property for his own benefit, see *Merket v. Smith,* 33 Kan. 66, 5 Pac. 394, and 21 Cyc. 101, 102.

The fact that the court approved the report of the referee without having examined the evidence can not avail appellant, because we have examined the evidence set out in the abstracts and approve the findings as well as the conclusions of law.

The only serious error we find was in the refusal to render judgment against appellant for the full amount found to be due. The petition should be regarded as amended to conform to the facts. The furtherance of justice seemed to require this, and there was an application to amend before the evidence was all taken, which application should have been granted.

The judgment will therefore be modified and the cause remanded with directions to render judgment against Gustav Witt for the whole sum found due. A counter abstract was printed containing five hundred and fifty pages. There being no occasion for one of more than fifteen pages, the cost of printing the excess will be taxed to the appellee.