## FRANCIS et al. v. SPERRY et al.

No. 9159—Opinion Filed July 30, 1918.

On Rehearing, Dec. 24, 1918.

. (176 Pac. 732.)

(Syllabus.)

1. **Guardian and Ward—Orders of County Court — Vacation — Jurisdiction of District Court.**

The district courts have equitable jurisdiction, in an action brought for that purpose, to set aside and annul orders made by the county court approving the final settlement of a guardian, where such final settlement and orders were procured by undue influence on the wards and fraudulent representations made to the court.

2. **Guardian and Ward—Power of Court— Influence of Guardian—Presumption.**

Courts watch with great jealousy transactions of guardians with their wards, or any dealings between them, affecting the estate of the ward. Owing to the confidential relations between them, it will be presumed that the ward was acting under the influence of the guardian, and all transactions between them prejudicially affecting the interests of the ward will be held to be constructively fraudulent; this presumption extends to transactions between them after the guardianship is ended, but where the influence remains and the control and dominion of the former ward's property still continues.

3. **Guardian and Ward—Settlement of Accounts—Loss to Ward—Good Faith.**

After the ward attains majority and the guardian's accounts have been settled, while the disability of infancy has been removed, that arising from the trust relation is but slightly diminished, and contracts between the guardian and ward, while the guardian is still exercising control and dominion over the property of the ward, are scrutinized with the utmost care and caution, and, if the guardian derives a benefit, or the ward suffers a loss by the transaction, it will not be sustained if the court is convinced that there is lacking the element of the utmost fairness and good faith.

4. **Guardian and Ward—Suit to Vacate Order Approving Guardian's Account.**

Evidence in this record examined, and held to support the findings of undue influence in securing final receipts and settlements from the wards, and false representations made to the county court that a full, fair,

and complete settlement had been made and all property coming into the hands of the guardian had been delivered to the wards.

**5. Guardian and Ward—Investment of Ward's Money—Authority of Court—Liability.**

Where a guardian invests his ward's money without authority of the county court, he does so at his peril and is held to strict account. If such investments are prejudicial to the best interests of the ward, the ward is not compelled to accept same on final settlement, and the amount so invested may be charged to the guardian.

**6. Guardian and Ward—Guardian's Possession of Ward's Property—Accounting—Estoppel.**

Where a guardian, under color of his office, either during the minority or majority of his ward, obtains possession of the ward's property before final settlement, he is estopped when called into court as guardian to account for it, to deny that he received it as such guardian, but only in his individual or unofficial character.

**7. Same — Accounting — Interest — Rate.**

Where a guardian, without authority of the court, purchases real estate with the money of his ward, to the prejudice of the interests of the ward, and the amount so invested charged to the guardian on his final account, he is chargeable with the highest legal rate of interest on said sum for which he could have loaned the money under proper order of the court.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Almeda Sperry and another against J. L. Francis and others to set aside certain orders of the county court in approving the final account filed by Francis as plaintiffs' former guardian and releasing his bondsmen from liability. Judgment vacating the orders, restating the account, and against Francis and his bondsmen, and defendants bring error. Affirmed.

Everest & Campbell, A. D. Brown, and Vaught & Brewer, for plaintiffs in error.

Lawrence Mills and J. K. Jamison, for defendants in error.

OWEN, J. Defendants in error brought this action in the district court of Oklahoma county against J. L. Francis, their former guardian, and his bondsmen, to set aside and annul certain orders made by the county court of Oklahoma county in the approval of the final account filed by Francis, as guardian, and releasing his bondsmen from liability. The petition alleges fraud on the part of Francis in misappropriating the

funds to his own use, procuring final receipts from his wards by undue influence, and falsely representing to the court that he had made final settlement and delivered to these wards all of the property coming into his hands as guardian.

Judgment was rendered by the district court vacating the orders, restating the account between Francis and his wards, and against Francis and his bondsmen for the amount found to be due, together with 8 per cent. interest on the funds converted by Francis to his own use.

To reverse this judgment, it is contended: (1) That the district court was without jurisdiction of the subject-matter; (2) that the evidence is insufficient to support the allegations of fraud; (3) that, assuming the allegations proven, it was error to refuse the guardian credit for certain investments and loans made from the wards' funds without authority of the county court; and (4) that a higher rate of interest than that allowed by law was charged to the guardian.

The first question presented as to the jurisdiction of the district court to vacate the orders entered by the county court has been settled against the contention of plaintiffs in error in the cases of Brewer v. Dodson 60 Okla. 81, 159 Pac. 329; Elrod v. Adair, 54 Okla. 207, 153 Pac 660; Johnson v. Filtsch, 37 Okla. 510, 138 Pac. 165.

In support of the second contention, counsel urge the well-settled rule that in cases where fraud is alleged in the procuring of execution of written instruments or deeds the proof to sustain the allegations must be sufficiently strong to repel all opposing presumptions, and must be of such weight and cogency as to satisfactorily establish the wrongful conduct charged: honesty and fair dealing as a rule being presumed. A different rule applies here. Section 3340, Rev. Laws 1910, provides that the ward, after arriving at majority, may settle accounts with his guardian and give him a release, "which is valid if obtained fairly and without undue influence." Undue influence is defined by section 906 of this statute to be:

"The use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him."

This court said in the case of Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756, that courts watch with great jealousy transactions of guardians with their wards or any dealings between them affecting the estate of the

ward. From the confidential relations between them, it will be presumed that the ward was acting under the influence of the guardian, and all transactions between them prejudicially affecting the interest of the ward will be held to be constructively fraudulent. In that case it was also held that this presumption extends to transactions between them after the guardianship is ended, but where the influence remains and the control and dominion of the former ward's property still continues.

It appears that Francis was appointed guardian of these wards July 3, 1909, and filed his report of such guardianship covering the period of July 13, 1910, showing a balance on hand due the minors of $1,060. No inventory of the estate was filed and no further report was made by Francis until December 11, 1914, at which time he filed in the county court what he termed his final report, and there reported that one of the wards had attained her majority and the other had married, and that since said majority and marriage he had made full and final settlement and delivered to said wards all properties, real, personal, and mixed, which had come into his hands and possession by reason of his guardianship. With this report he filed final receipts and stipulations signed by the wards, acknowledging the correctness of the account and relieving the guardian of the necessity of filing vouchers showing expenditures. The district court found from the evidence there had in fact been no settlement and that these receipts and stipulations were signed by the wards at the request of Francis without knowing their contents or legal effect. The wards had made their home with the Francis family from about the time of his appointment. He was their cousin, and they reposed implicit confidence and faith in his integrity and ability, and always signed whatever instrument or document he requested without question or explanation. It appears that during the years 1911 and 1912 Francis received something over $37,000 from the estate of the wards' grandfather. No inventory or report prior to December 11, 1914, was made of this. These trust funds were mingled with his own, keeping no separate account of his receipts or his disbursements as guardian. He filed no vouchers in the county court with either of his reports, nor did he make application to that court for authority to invest the money of his wards. Without an order of court, he made investments of these funds in real estate in Oklahoma City, some of which was owned by himself. In other

words, he appropriated part of the funds belonging to his wards to his own use and sought to repay the same by conveying to the wards some of his own property, the price of which was fixed by himself without authority from the county court. These investments were found by the district court to be to the detriment and disadvantage of his wards.

It appears also that one of the wards became of age December 15, 1910, and thereafter, on the 29th day of August, 1911, Francis secured from her a receipt for $530 in full discharge of his liability to her as guardian. Prior to securing this receipt, he had on the 4th day of January, 1911, secured from her a general power of attorney to collect money due her from her grandfather's estate and to invest such moneys in Oklahoma City real estate or to loan same as he saw best. This pretended settlement was not reported to the county court, nor was the ward advised as to her status and rights. On the contrary, he continued to act as her guardian, receiving drafts from her grandfather's estate made payable to him as her guardian, and receipted for same in such capacity, and in his final report of December 11, 1914, asked for compensation for services rendered as guardian up to that date.

In the case of Gillet v. Wiley, 126 Ill. 310, 19 N. E. 287, 9 Am. St. Rep. 587, where the guardian procured his ward, after the latter had attained his majority, to sign a receipt in full for all money which came into his hands as guardian, the ward not reading the paper or acquainting himself with its contents, but relying solely on the statement of his guardian as to its character and import, it was held that the transaction was void. This seems to be the settled rule, and in the case of Williams v. Davison's Estate, 133 Mich 344, 94 N. W. 1048, it was held to be elementary that even after the ward attains majority and the guardian's accounts have been settled, while the disability of infancy has been removed, that arising from the trust relation is but slightly diminished, and contracts between guardian and ward are scrutinized with the utmost care and caution, and if the guardian derives a benefit, or the ward suffers a loss by the transaction, it will not be sustained if the court is convinced that there is lacking the element of the utmost fairness and good faith. We think the findings of sufficient fraud to vacate the orders made by the county court are reasonably sustained by the evidence.

Under the provisions of section 6569 of the statute (Rev. Laws 1910), the county

court, on the application of a guardian or any person interested in the estate of the ward, after the notice prescribed, may authorize and require the guardian to invest his ward's money in real estate, or in any other manner most to the interest of the ward. Francis did not undertake to comply with this statute, but placed the funds of his ward in the banks to his individual credit, used and invested the same as his own, and, as it appears, to the detriment of the wards.

This court said in the case of Cabell v. McLish, 61 Okla. 224, 160 Pac. 592, that when a guardian loans his ward's money without an order of the county court, or its approval, he does so at his own risk, and is held to strict account. In the case of American Bonding Co. v. Kennedy, 46 Colo. 394, 104 Pac: 81, the Supreme Court of Colorado held that a loan by a guardian of his ward's money, without strict compliance with the statutory requirements, is made at the guardian's peril. To the same effect are the cases of Hughes v. People, 111 Ill. 457; Winslow v. People, 117 Ill. 152, 7 N. E. 135.

In this connection it is urged that Francis is not liable as guardian for the moneys received for one of the wards after she became of age and had executed the power of attorney. Continuing to act in the capacity of guardian in receiving such moneys, and having asked an allowance for compensation for services rendered as such guardian, Francis is estopped from denying his guardianship. In the case of Bombeck v. Bombeck, 18 Mo. App. 26, it was held both on authority and reason, where a guardian under color of his office, either during the minority or majority of his ward, obtains possession of the ward's property, or money before final settlement, he is estopped, when called into court as guardian to account for it, to deny that he received it as such guardian, but only in his individual or unofficial character. And in that case it was said:

"Especially must this be so where he seeks by the repudiation of his guardianship to escape the measure of liability which would attach to the fund as a trust in his hands as guardian."

See Big. Estop. 435, 576; Dix v. Morris, 66 Mo. 518.

In restating the account, the district court charged Francis with 8 per cent. interest on the funds deposited to his personal credit and used as his own. It is urged that the legal rate of interest in this state under the Constitution, in the absence of contract, is 6

per cent.. and that no higher rate should have been charged the guardian. Counsel rely on the case of Abraham v. Harry, 65 Okla. 253, 165 Pac. 1154, where it was held that a guardian was liable to his ward for 6 per cent. interest on the amount found to be due on final settlement. That case is distinguishable from this. There the guardian was found to be due a certain sum, which was ordered to be paid, together with 10 per cent. interest until paid. Here the interest was calculated on the amount appropriated to the guardian's use and deposited to his individual credit. His use of this trust fund without authority of the court did not create a contract relation so as to bring the transaction within the provision of the Constitution. The district court found from the evidence that 8 per cent. was the usual and prevailing rate for real estate loans during the period the guardian was using these funds as his own, and properly, we think, charged the guardian with this rate of interest. In the case of Scheib v. Thompson, 23 Utah, 564, 65 Pac. 499, the Supreme Court of Utah had before it this identical question. There it was held, no order being made for the investment, the guardian was properly held for the conversion of the fund, including that part not reported or inventoried; and, following the case of In re Stott's Estate, 52 Cal. 403, it was held that the guardian was responsible for presumed profits upon money in his hands which he had used and failed to account for, and that the general rule in such cases is that he should be charged with the usual rate of interest on such sums compounded annually. In that case the court found that the guardian could have loaned the money at an average rate of interest of 10 per cent. per annum, and charged him with that rate. It was proper in the instant case for the court to charge the guardian with the highest rate of interest for which he could have loaned the money.

Judgment of the lower court is affirmed.

TURNER, BRETT, MILEY, and TISINGER, JJ., not participating. The other Justices concur.

### On Rehearing.

PER CURIAM. The judgment of the district court was made to draw interest at the rate of 8 per cent. per annum from the date it was rendered. It appears this was error. Under the provisions of section 1008, Rev. Laws 1910, all judgments not rendered on a contract in which a higher rate of interest is specified shall bear interest at the rate of 6 per cent. per annum from the date

rendered, and to that extent the judgment of the lower court will be modified, but in all other respects affirmed, and the petition for rehearing denied.