No. 24,146.

IRENE SOWERS, *Appellee,* v. (ROY POLLOCK et al.) H. H. WETZIG and H. W. SMITH, *Appellants.*

### SYLLABUS BY THE COURT.

GUARDIAN—*Guardian May Not Loan to Himself the Money of His Ward— Order of Court Authorizing it Void.* A guardian may not loan to himself the moneys of his ward, and an order of the probate court authorizing a guardian to borrow and use for his own purposes practically the entire fund committed to his care upon his promissory note without security is void, and will afford no protection to the guardian, nor will it relieve the sureties on his bond from liability for the misuse of the trust fund.

Appeal from Geary district court; CASSIUS M. CLARK, judge. Opinion filed January 6, 1923. Affirmed.

*James V. Humphrey,* and *Arthur S. Humphrey,* both of Junction City, for the appellants.

*William W. Pease,* of Junction City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Irene Sowers upon a guardian's bond executed by Roy Pollock as guardian, with H. H. Wetzig and H. W. Smith, as sureties. Judgment was given in favor of the plaintiff and against the sureties, who appeal.

After the issues were joined, plaintiff moved for judgment on the pleadings and defendants also asked for judgment in their favor on the same basis. Plaintiff alleged that her mother died in 1917, leaving to plaintiff and her brother, Clyde Pollock, $1,000, the proceeds of an insurance policy. The children were both minors,

and Roy Pollock, their father, was appointed as guardian of their persons and estate. He gave the bond mentioned for $2,000 signed by himself and the sureties mentioned. The guardian obtained possession of the $1,000, and later procured an order of the probate court allowing him to loan to himself $900 of his wards' money, for which he gave his note, to himself as guardian, payable in three years with interest at six per cent per annum. With this money he purchased real estate taking the title to it in his own name, and later he filed an account in the probate court showing the application of the trust fund that had been placed in his hands. In the account he claimed and was allowed a credit for $500, being a payment on the purchase price of real estate purchased for himself and $147.64 for lumber used in the improvement of the real estate, and $111.30 for the work of carpenters in making the improvement. It is alleged that these were not debts of the wards and that the orders of the probate court allowing him to loan the wards' money to himself and approving the accounts for using it to buy property for himself, were all nullities. It was further alleged that he had absconded and left the state. The guardian was not served with process and made no defense, but the sureties on his bond answered and claimed that the probate court had jurisdiction over the guardian and the wards, that it made a lawful order requiring the guardian of the estate of the wards to loan the money to himself, also claimed that at the time there existed circumstances and conditions of such an exceptional character, which are not described, that the court is deemed to have found and decided that such an order was to the best interest of the estate of the minors, that no appeal had been taken from it, that it had never been set aside, and that as the guardian complied with the order of the probate court, no liability has arisen against the sureties on the guardian's bond.

Numerous authorities are cited by the defendants to the effect that judgments of the probate court in matters in its jurisdiction are not subject to collateral attack. As said in *Proctor v. Dicklow*, 57 Kan. 119, 45 Pac. 86, such a judgment "is ordinarily conclusive and final, unless vacated by appeal, impeached for fraud, or set aside by direct proceedings brought for that purpose." Although of limited jurisdiction, a probate court has full power to adjudicate matters which come within the jurisdiction conferred by constitution and statute, and its judgment rendered within the prescribed limits, however erroneous, are ordinarily conclusive unless reversed

and set aside in appropriate proceedings. If it acts outside of its powers or its action is obviously fraudulent, the judgment rendered may be treated as a nullity. Here the court had power to authorize and approve loans of the wards' money by the ·guardian. (Gen. Stat. 1915, § 5050.) It had no power however to direct or permit the guardian to use the money of the ward for his own purpose. The loan to himself was in fact not a loan within the meaning of the statute cited. It has been expressly held that, "A guardian may not trade with himself on account of the ward or use or deal with his ward's property for his own benefit." (*Charles v. Witt*, 88 Kan. 484, 129 Pac. 140.) The court had no more authority to direct or approve a loan of the wards' money by the guardian to himself than he would have had to have directed a loan of the funds to the judge who made the order. His order was of no more effect than if he had authorized the guardian to use it in the purchase of lottery tickets in a bucket-shop deal or .in. any gambling transaction. In borrowing the wards' money the guardian became both borrower and lender, relationships in which his personal interest was brought into direct conflict with the interest of the wards whom he was bound to protect.

A principle which has been universally recognized since the beginning, was expressed by Lord Ellenborough in 1st Campbell, 528, that "no man should be allowed to have an interest against his duty."

In *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, it was said:

"Nothing in the law of fiduciary trusts is better settled than that the trustee shall not be allowed to advantage himself in dealings with the trust estate. He shall not be allowed to serve himself under the pretense of serving his *cestui que trust.*" (p. 618.)

In that case it was held that a guardian's sale of her ward's land to her husband upon fair consideration and free from actual fraud and where the sale had been confirmed by the court, was absolutely void and subject to collateral attack. Something is made of a remark in that case to the effect that there may be exceptional circumstances justifying sales by trustees to their wives or husbands or even to the trustee himself. However, we can conceive of no circumstances which would justify the loan of practically the entire trust estate to the guardian.

In *Webb v. Branner*, 59 Kan. 190, 52 Pac. 429, a guardian procured an order for the sale of his ward's property under which a sale was made to the purchaser who immediately conveyed the property

to the guardian. Although the sale was approved by the probate court and the accounts filed by the guardian were approved, the guardian discharged an order made relieving his sureties from liability on his bond, the sale was held to be void, and the estate was reopened for a just settlement. The action of the guardian in the present case, from which the sureties asked to be relieved from liability, was such a gross violation of duty, so plainly illegal and obviously fraudulent, that no sanction or validity could be given to it by an order of the probate court. The record of the probate court is presumed to speak the truth, but the truth as related in the order itself shows that the proposed action was so illegal and so tainted with fraud that the court had no power to authorize or approve it.

In *Fidelity & Dep. Co. v. Freud*, 115 Md. 29, a guardian borrowed a part of the fund committed to his care, and this was done on the permission and authority of the orphans' court. The question there was whether the loan made under the sanction of an order of the court would protect the guardian or the sureties on his bond. The court declared that:

"No one having fiduciary duties to discharge should be allowed to enter into any engagement in which he has, or can have, a personal interest conflicting, or which may possibly conflict, with the interests of those whom he is bound to protect." (p. 33.)

It was held that nothing in the statutes of that state nor in the general principles of law would relieve the guardian or his bond from liability for the misuse of the funds of his ward.

In another case, where a guardian had borrowed and used $750 of the money of his ward with the approval of the county court, and it was claimed that, the order of the court relieved the guardian from liability for its loss, it was held that the court was without authority to authorize the guardian to loan the money belonging to the estate of the ward to himself and that it could not by its order give validity to such a subterfuge. In the opinion it was said:

"Orders of a court of record valid on their face cannot be attacked collaterally, but the proceedings as to the $750 are so irregular and unconscionable as to carry with them the badge of fraud and to be vulnerable to attack by objections to the final report, in which the guardian by means of such invalid orders seeks to be relieved from liability for loss to the estate arising from the inadequate security taken. The county court is without authority to authorize a guardian to lend funds of the estate on securities offered by the guardian himself, or by order of court to give validity to any subterfuge in such respect." (*In re* Bates' Guardianship, [Okla.] 174 Pac. 743, 744.)

The order made by the probate court in this instance was void and subject to collateral attack. It afforded no protection to the sureties on the guardian's bond, and therefore the judgment of the court is affirmed.