[No. 19937. Department One. July 27, 1926.]

*In the Matter of the Estate of* Carroll D. Montgomery *(formerly Carroll D. Carmody).*[1]

[1] Guardian and Ward (24)—Accounting—Action for—Petition —Sufficiency. Where a guardian sells real estate of the ward and receives a commission on the sale, the commission belongs to the estate, and it is error to sustain a demurrer to a complaint by the ward seeking an accounting for such commissions; and it is immaterial that the guardian is in the real estate business and handles the estate matter as he does those of other clients and that he was making a profitable bargain for the estate.

[2] Same (24)—Accounting—Actions for—Time for Bringing. A minor may bring an action to compel his guardian to account for misappropriating funds of the estate without waiting until the time for the final account upon arriving at his majority.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered March 10, 1926, in favor of the defendant in an action by a minor for the removal of the guardian and for an accounting. Reversed.

*Lyons & Orton* and *C. R. Hovey,* for appellant.

*Clay, Allen, Hutchinson & Hutchinson,* for respondent.

Askren, J. — Carroll D. Montgomery, a minor, brought this action by his guardian *ad litem,* petitioning for revocation of letters of guardianship heretofore issued to one Charles T. Suter.

[1]Reported in 248 Pac. 64.

The petition shows that, in June, 1918, Charles T. Suter was appointed guardian of the estate and person of the petitioner and still acts in that capacity; that the value of the estate is upwards of $125,000; that the bulk of the estate is invested in real estate first mortgages, and that the gross income is about $7,000 a year; that, under orders of the court, the guardian is taking from the estate as compensation $3,500 per year, and the attorney $2,000 per year, with an additional $1,000 to each during 1925; that, in addition to such payments, the guardian received large sums of money as commissions upon real estate loans made by him with the petitioner's funds; that he has made no accounting of these commissions and claims them for his own; that, as guardian, he sold and exchanged real estate of the petitioner and received commissions thereon which he keeps and retains as his own; that, as guardian, he received and kept for his own use commissions received on insurance premiums paid for insuring property of petitioner's estate; that, in 1925, the entire income from the estate was absorbed by the attorney and guardianship fees, which petitioner alleges to be unreasonably large and excessive; that the estate is being mismanaged and another guardian is desired in place of the present one. The prayer asked for the revocation of the letters of guardianship, a new appointment of a suitable person, an order revoking all *ex parte* orders allowing excessive compensation, and all orders allowing the guardian commissions on real estate loans, insurance and sales, and that orders be made adjudging the reasonable amount of compensation of the attorneys and guardian.

To this petition, a demurrer was interposed and sustained by the court, and the minor appeals.

The sole question for our decision is: Does the petition state facts sufficient to constitute a cause of action,

and require the court to hear evidence in support thereof?

[1] We are quite clear that the allegations of the petition set forth certain actions of the guardian that are indefensible in law. A guardian cannot be allowed to make a profit from the handling of his ward's estate. His compensation must be such a sum as the court deems proper in view of the value of the services performed. To allow the guardian to do otherwise is to place him in a position where there is a temptation to speculate with his ward's estate, and lead to the ultimate danger of improvident deals and, perhaps, loss of the estate itself. This rule is so well grounded in our legal system as not to require citation of authority to support it. If the guardian sells the real estate of the ward and receives a commission thereon, the commission belongs to the estate of the ward. Likewise, if the guardian buys mortgages for the ward and receives commissions thereon, he must account to the estate therefor. Respondent has filed a supplemental transcript which contains an order of the superior court allowing the guardian to accept such commissions, in addition to the regular compensation allowed by the court. This appears to have been done after petition by the guardian therefor, in which is set up the fact that the guardian is in the real estate business, and that the loaning of the ward's money on mortgages and selling of his real estate is handled the same as that of any other client of the business, and that, if the loans were made or the property sold through any other real estate firm, the ward's estate would have to pay a commission. These facts may all be true, but they nevertheless place the guardian in an adverse position to his ward, which cannot be countenanced. The principle is well stated in the leading case of *Magruder v. Drury*, 235 U. S. 106, as follows:

"It is a well settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity. 'It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.' *Michoud v. Girod,* 4 How. 503, 555.

"It makes no difference that the estate was not a loser in the transaction or that the commission was no more than the services were reasonably worth. It is the relation of the trustee to the estate which prevents his dealing in such way as to make a personal profit for himself."

The order of the trial court permitting the taking of commissions may have some bearing upon the question of whether the guardian has intentionally abused the trust imposed upon him, but it cannot legalize the handling of the minor's estate in such a manner.

[2] It was suggested that, if the commissions and amounts of compensation have been improperly taken, the whole matter can be adjusted two years hence when the ward reaches his majority, and a final account is rendered by the guardian; and since the ward is amply protected by bond, no harm can ensue. But we think a ward not bound to sit idly by and see his guardian appropriate to himself, and claim as his own, that which belongs to the ward, with the hope that, when the final account is rendered, he may receive back that which is

his, if the guardian or his bondsmen be able and willing to respond. While the ward may wait until after his majority to bring such an action, we should not deny the assertion of his rights because made prior to that time. Rather should we look with favor upon a prompt assertion of his claim.

Respondent insists that the record discloses that, under the guardianship, the estate has materially increased in value, due to the judicious handling of the property of the estate, and that, since no loss has resulted through the allowance of the commissions, and they were taken openly and under authority of the court, we should approve the action. It may be that the open acceptance of these commissions under order of the court demonstrates the good faith of the guardian, and that the results are as great as could have been obtained for the estate under the most meticulous handling thereof. But the rule to be followed by those who act in such a fiduciary relation can never be measured by the success attendant thereon. Courts have always frowned upon the dual relation of a guardian when dealing with his ward's estate, and only by constantly adhering to the rule can we hope to insure the ward that protection in his estate that has always been one of the chief desires of courts of justice.

Reversed, with instructions to overrule the demurrer.

TOLMAN, C. J., HOLCOMB, BRIDGES, and FULLERTON, JJ., concur.