No. 28,378.

ED HOGUE, *Appellee,* v. J. R. HYLAND, as Administrator of the Estate of Thomas H. McBerty, Deceased, *Appellant.*

(273 Pac. 420.)

Opinion filed January 12, 1929.

*J. R. Hyland,* of Washington, for the appellant.

*Edgar Bennett* and *A. C. Bokelman,* both of Washington, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one by an administrator, formerly guardian of a feeble-minded person, to recover from a former guardian of the same feeble-minded person for neglect in the administration of his duties as such guardian. The defendant prevailed and plaintiff appeals. The facts are substantially as follows:

On March 12, 1924, Thomas H. McBerty was adjudged feeble-minded and Ed Hogue was appointed as his guardian. Hogue qualified and gave bond. On January 4, 1926, J. R. Hyland was appointed guardian to succeed Hogue, who had resigned. Hyland qualified and gave bond. On January 8, 1926, Hogue filed his final report as guardian. On January 13, following, the probate court made an order accepting Hogue's resignation, directing him to turn over to his successor all assets belonging to the estate, but declined to approve his final report. McBerty died November 5, 1926, and on November 20, following, Hyland was appointed administrator of his estate. On July 9, 1927, Hyland filed objections and exceptions

to Hogue's final report, and on the hearing held September 1, 1927, the probate court disapproved it and authorized and directed Hyland as administrator to file suit against Hogue for the recovery of certain amounts found due. Hogue appealed to the district court, which on March 22, 1928, reversed the judgment of the probate court and approved Hogue's final account as guardian.

The administrator contends that Hogue is liable because of his failure or neglect to collect certain notes aggregating $5,150 purchased from and guaranteed by the Barnes State Bank, and being part of the assets of the estate at the time Hogue accepted his trust as such guardian; because of the purchase by Hogue, as guardian, of a note of James Pifer for $1,000, past due when so purchased, unsecured and without order of the probate court; and because of the purchase or renewal of another note for $7,000, taking a second mortgage as security therefor and releasing the bank as surety, without order of the probate court. The administrator argues that while a guardian or trustee is not an insurer of the assets of his estate, he must act in good faith, use sound discretion and reasonable diligence, and where appointed by a court must follow the instructions of such court.

Hogue contends that there was no evidence that he could have collected the notes; no evidence that anyone could have foreseen the failure of the bank; no evidence showing that the makers of the notes in question were not good for the face amount of the notes, or that any attempt had been made to collect them or a failure in such attempt; no evidence that the administrator could not have collected judgments procured against the makers. The probate court found such misconduct, negligence, breach of trust and mismanagement on the part of Hogue as to entitle the administrator to judgment for some $16,000. When appealed to the district court the case was tried on the same pleadings, but was tried *de novo*. The district court after hearing the evidence made a general finding in favor of Hogue, in effect that there was no misconduct, negligence, breach of trust or mismanagement and no liability on the part of Hogue. The defendant contends that the burden was upon the administrator to prove the allegations of his petition, which he failed to do.

While all of the evidence introduced in the probate court upon which the findings were made against Hogue appears not to have been before the district court, it was shown that the bank guar-

anteed payment of certain of the notes in question; that the bank continued a going concern long after the notes matured, which was at least *prima facie* evidence that the guardian should have collected them. Furthermore, it was shown that the guardian released the bank and took a second mortgage as security for another note without the order or approval of the probate court; also, that the guardian without approval or order of the probate court used the assets of the estate to purchase another note of doubtful value. These were all matters tending to make a *prima facie* case for the administrator and placed upon Hogue the burden of showing why he should have been relieved of responsibility. When Hogue took over the assets of his ward he found five notes amounting to $5,150 belonging to the estate which had been sold by the Barnes State Bank and under its guarantee. Certainly it was the duty of the guardian to collect these notes if possible unless given authority by the probate court to renew or extend them. The bank having failed, his successor, the administrator, reduced the note to judgment and has collected dividends aggregating 45 per cent from the receiver in charge of the failed bank. It is presumed that a guardian or administrator would perform his duty and collect such judgments. It is therefore reasonable to assume that collection cannot be made from the makers. If the present administrator has been negligent or if Hogue had done his full duty as guardian in attempting to collect the notes, he could have shown such facts.

"It shall be the duty of every such guardian to prosecute and defend all actions instituted in behalf of or against his ward; to collect all debts due or becoming due to his ward," etc. (R. S. 39-209.)

"[The] probate court . . . may make an order . . . for the management of his estate," etc. (R. S. 39-210.)

"The probate court shall have full power to control the guardian . . . in the management of the person and estate," etc. (R. S. 39-230.)

"Guardians . . . must also, in other respects, manage their interests [the ward's] under the direction of the court. They may thus lease their lands or loan their money during their minority, and may do all other acts which the court may deem for the benefit of the wards." (R. S. 38-210.)

See, also, *Charles v. Witt*, 88 Kan. 484, 129 Pac. 140. In *Sowers v. Pollock*, 112 Kan. 599, 212 Pac. 103, it was held that the loan of a ward's funds to the guardian, even with the order of the probate court, is void and affords no protection to the guardian. And so it would seem that the unauthorized purchase of an unsecured note,

past due when purchased, or perhaps worthless, not shown to have increased in value, in the absence of any evidence showing negligence of the administrator in failing to collect, is a violation of the duty of a guardian.

"It is a breach of the guardian's duty to loan the money of his ward without security, and it is very generally held that if he does so he is answerable to the ward for any resulting loss, regardless of the credit of the borrower, and notwithstanding the guardian acted in good faith, and was diligent in endeavoring to prevent a loss." (28 C. J. 1143, § 241.)

"In the absence of statute, the committee or guardian has no authority or power to loan his ward's money. If he has authority to do so, the loan should be made upon adequate security. It has been held that where a guardian makes a loan on the sole credit of the borrower it devolves on him to show that he acted in good faith and with due prudence, and in the absence of such evidence, the presumption is otherwise. If he makes an unauthorized loan he is liable for a resulting loss, and he is not relieved from such liability on the ground of the borrower's subsequent bankruptcy." (32 C. J. 694, § 387.)

"In making investments the guardian must act in absolute good faith, and with reasonable diligence to insure the safety of the investment. The modern motto, 'safety first' applies nowhere more strongly than in the investment of trust funds. The standard often applied in other relations, that one must act with such care as a reasonably prudent man would use in his own concerns, is hardly sufficient here. Even a prudent man may sometimes take a chance of loss for the sake of an unusual profit, or may loan money on insufficient security to oblige a friend. But in investing trust funds the element of speculation and that of favoritism are alike forbidden." (12 R. C. L. 1131.)

We are of the opinion that the administrator should have been permitted to file suit against the former guardian as directed by the probate court.

The defendant has presented a motion to dismiss the appeal, contending that the alleged errors committed by the trial court were not pointed out to the court on the hearing of the motion for a new trial. It appears that the case was tried very largely upon an agreed statement of facts; that it was fully argued to the court and judgment rendered March 22, 1928; that the motion for a new trial was immediately filed by the plaintiff and came on for hearing the succeeding day. The grounds of the motion were:

"1. Because of erroneous rulings of said court.
"2. Because the said judgment is wholly contrary to the evidence.
"3. Because the said judgment is wholly contrary to the law."

It appears that no error is based upon the admission or rejection of evidence. The case was tried by the court so there is no question

of erroneous instructions. Practically there was and is but a question of law upon undisputed facts. Therefore the motion for a new trial was simply that the decision of the court was incorrect and contrary to the law and evidence. Counsel for the administrator directed attention of the trial court to the argument and authorities cited on the previous day and stated that he had nothing further to offer. We think under the circumstances the trial court was sufficiently informed of the errors claimed by plaintiff.

The judgment is reversed and the cause remanded with instructions to affirm the order of the probate court.