## W. T. Sistrunk & Co. v. Navarra's Committee et al.

(Decided May 25, 1937.)

GAYLE A. MOHNEY and WM. W. MEEKS for appellant.

STROTHER KISER and H. H. HARNED for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an appeal from a judgment of the Fayette circuit court dismissing the petition of W. T. Sistrunk & Co., in an action in which the plaintiff sought to recover the sum of $755.59 from the estate of Frank Navarra, an incompetent.

Frank Navarra owned a lot and building in Lexington, Ky., which was encumbered by a mortgage held by the Lincoln Bank & Trust Company of Louisville. For many years prior to December 1, 1927, Navarra had conducted a retail fruit and grocery business in the building. On December 1, 1927, he was adjudged a lunatic in the Fayette circuit court and committed to the Eastern State Hospital for the Insane, where he is still confined. On December 5, 1927, his niece, Angelina Mangoine, was appointed his committee by the Fayette circuit court, the order of appointment authorizing her "to take charge of, hold and control all of the property assets and business of said Frank Navarra." Angeline Mangoine continued to carry on the fruit and grocery business of her ward until December 13, 1928, when she tendered her resignation as his committee to the Fayette circuit court. The cause was referred to th master commissioner to settle her accounts, and on April 13, 1929, the commissioner filed his report of settlement which was confirmed on April 13, 1930. It appears from those proceedings that Angelina Mangoine had conducted the business at considerable profit during the time she acted as committee. A few days after the order confirming the commissioner's report of settlement was entered, S. Navarra, a brother of Frank Navarra, filed a petition in the Fayette circuit court in which he alleged that he had been conducting the business of his brother since the resignation of the former committee; that it was necessary that a committee be appointed by the court to manage the affairs of Frank Navarra in order to preserve the estate; and he requested that he be appointed such committee. On April 19, 1930, an order was entered appointing S. Navarra committee of Frank Navarra. The order, after

reciting that the court had accepted the former committee's resignation and released her bond, leaving Frank Navarra without a committee, reads:

"And it further appearing to the court by the petition of S. Navarra, filed herein, that the said Frank Navarra's estate should be looked after by a Committee and the said S. Navarra, being a brother of said lunatic is hereby appointed as the Committee of said Frank Navarra, and his bond as such Committee, is hereby fixed at $2,000.00 said S. Navarra to succeed said Angelina Mangoine as the Committee of said Frank Navarra."

S. Navarra continued to conduct the fruit and grocery business until some time after May 30, 1931, when he disappeared, leaving behind him only the real estate and a number of debts which he had contracted while acting as committee of his brother. On December 30, 1932, the Department of Public Welfare, suing for the Eastern State Hospital for the Insane, brought an action seeking a judgment against the estate of the lunatic Frank Navarra, in the sum of $1,636, for his board and maintenance from December 1, 1927, to October 1, 1932, and asking that it be adjudged a lien against the lunatic's real estate to secure the payment of the debt. The mortgagee was made a defendant, and it filed its answer and cross-petition setting up its mortgage lien. The property was sold, and, after the payment of the mortgage indebtedness, the judgment of the Eastern State Hospital for the Insane, and the costs, there remained a surplus from the proceeds of sale, amounting to $570.88, which the master commissioner was directed to hold subject to the further orders of the court. In that action, A. A. Bablitz was appointed and qualified as committee of Frank Navarra, and he collected rentals amounting to $180 before the real estate was sold.

In October, 1934, Sistrunk & Co. brought this action in which it asked judgment against Frank Navarra in the sum of $755.59, with interest thereon from June 1, 1931, and for a general order of attachment against his property. Frank Navarra, A. A. Bablitz, committee, and S. Navarra, committee, were named defendants. It was alleged in the petition that between October 1, 1930, and June 1, 1931, the plaintiff sold and delivered to the defendant S. Navarra, as committee

and agent for the defendant Frank Navarra, fruits and groceries of the fair and reasonable value of $1,255.59, and that no part of said indebtedness had been paid except the sum of $200, paid December 16, 1930, and $300, paid January 1, 1931. The case was submitted upon an agreed stipulation of facts, briefly outlined above, and it was stipulated that the question to be determined by the court was:

> "Whether S. Navarra, as committee for Frank Navarra, had power and authority to operate the fruit business owned by Frank Navarra and to bind the estate of the said Frank Navarra for the payment of plaintiff's said debt in the operation of said business."

Appellant's brief contains an interesting discussion of the law relative to the power of the circuit court to authorize the committee of a lunatic to carry on the ward's business. It is conceded that the question has never been directly passed upon by this court, but a number of cases from other jurisdicitons are cited in support of the contention that a court having jurisdiction of incompetent persons and their estates has power to authorize the committee to continue the incompetent's business. In view of our conclusion that the Fayette circuit court never authorized S. Navarra, the committee, to continue the fruit and grocery business of his ward, the question as to the power of the court to grant such authority is not presented. It may be said in passing that in the jurisdiction where the power of the court to order the committee to continue the business of the ward is recognized, it is held that such powers should be exercised with caution. Under section 2153 of the Kentucky Statutes, the powers of the committee of a lunatic, or incompetent person, are the same as those of the guardian of an infant. Section 2032 of the Statutes provides that a guardian shall have the possession, care, and management of the ward's estate. This statute does not contemplate the operation of a business enterprise by the guardian for the ward. This conclusion is supported by the clear implication of all legislation on the subject, and particularly the restrictions imposed upon committees, guardians, and other fiduciaries in the investment of funds in their hands. Section 4706, Kentucky Statutes. The general rule is stated thus in 12 R. C. L. 1134:

"The prohibition of the guardian's risking his ward's funds by any investment of a speculative nature applies most strongly to his engaging those funds in any kind of business. Cases may sometimes occur where a ward inherits an interest in a business, and it is necessary to temporarily continue the business in order that it may be sold as a going and successful enterprise; but even in such a case the guardian must apply for and obtain an order of court authorizing him to continue the business and such an order will only be granted in case of evident necessity, and under the most careful limitations."

See, also, 28 C. J. 1125, sec. 209, and annotation to Swaine v. Hemphill, 40 L. R. A. (N. S.) 201.

It is an elementary principle of law that a fiduciary may not risk trust property in trade or speculation, and this rule applies even where he simply continues the business or trade of the cestui que trust. It is his duty to close up the business at the earliest convenient moment, and withdraw the funds and invest them in securities permitted by law. The order of appointment of S. Navarra as committee of Frank Navarra did not empower the committee to continue the business of the ward even if it be conceded that the court had the power to make such authorization under the circumstances. The order appointing the original committee, Angelina Mangoine, authorized her "to take charge of, hold and control all of the property assets and business of Frank Navarra." This did not authorize her to continue the business of the ward and to bind his general estate for debts contracted by her. She did continue the business and made a profit for her ward in so doing, and, when she made her settlement, no exceptions, of course, were filed. The order appointing S. Navarra committee of his brother merely recited that he was appointed committee to succeed Angelina Mangoine. The order did not, by implication or otherwise, authorize him to continue the business of the ward, and it follows that he was without authority to bind the estate of Frank Navarra for debts contracted by him in the operation of the business.

The judgment of the lower court being in accord with the views herein expressed, it is affirmed.