[Civil No. 4580.   Filed June 5, 1944.]

[149 Pac. (2d)  680.]

ALDA DOWNING, as Administratrix of the Estate of James P. Whelan, Deceased, and FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellants, v. LUCILE K. SKLUZACEK, Objector to Account of James P. Whelan, Guardian, Appellee.

Mr. L. V. Rhue, for Alda Downing, Administratrix.

Messrs. Perry, Silverthorne & Johnson, for Fidelity & Deposit Company of Maryland.

Mr. W. J. Van Spanckeren, for Appellee.

DE CONCINI, Superior Judge.—In this case, Alda Downing, as administratrix of the estate of James P. Whelan, the deceased guardian, and Fidelity & Deposit Company of Maryland, the surety company on the deceased guardian's bond, are the appellants, and Lucile K. Skluzacek, appellee, the daughter of the incompetent, A. T. Skluzacek, is the objector to the account of Whelan, the guardian of her father the incompetent. The court below sustained the objections, supplemental objections and exceptions of Lucile K. Skluzacek to the accounts of the guardian, and denied· the motion of the surety company to set aside said order. The court below, among other things,

fixed the indebtedness of said guardian to the estate of the incompetent in the sum of $4,125.91. From that order appellants appeal.

A. T. Skluzacek was declared an incompetent by the Superior Court of Maricopa County, June 2, 1937, at which time James P. Whelan was appointed guardian and made bond in the sum of $5,000 with the appellant, Fidelity & Deposit Company of Maryland, as surety. No further proceedings in the guardianship were taken through the court from that time until April 25, 1941, when pursuant to court order the guardian filed an inventory and his first account. On July 22, 1941, he filed an amended account.

The property consisted, among other things, of a going lumber business in Chandler, Arizona. The guardian continued to operate the business without any order from the court, sold and disposed of practically all of the personal property without order or confirmation of court, and as representative of wholesale lumber firms sold himself, as guardian, thousands of dollars worth of materials, which were resold in the course of the retail lumber business. By June 16, 1940, the guardian had disposed of all of the property of the ward except a few items worth $150.

No taxes or assessments on improvements were ever paid on any of the real property belonging to the ward. The lumber-yard and the buildings valued at approximately $14,000, as shown by the inventory filed, were sold for taxes for the sum of $140.10.

■ Appellant raises the proposition that the daughter of the incompetent has no right to object to the guardian's account. Section 42–139, Arizona Code Annotated 1939, gives her that right. In addition to that, the lower court when it revoked the Letters of Guardianship of Whelan, appointed the daughter, the

objector, as guardian. It is the guardian's duty to protect the estate of the ward.

■ Appellants cite a number of assignments of error that can be disposed of under one head. The question is: Did the guardian act at his own peril when he continued the operation of the business and disposed of all of the property of his ward without an order or confirmation by the court?

Sections 42-129 and 42-143, Arizona Code Annotated 1939, provide that the laws relating to estates of deceased persons shall apply to guardianships.

Section 38-1204, Arizona Code Annotated 1939, reads in part:

*"Sale of . . . personal property. . . .* The order for the sale may be made without notice; but the executor, administrator or special administrator is responsible for the property unless the court shall approve the sale."

■ All of chapter 42 (Guardian and Ward) of our 1939 Arizona Code Annotated came from California. See Kerr's Code of Civil Procedure, Part 3, 2nd Edition, 1920, Chapter XIV, Article 1, and Hillyers C. C. P. and Probate Code 1935, Div. IV, Guardian and Ward. Therefore, California decisions, when not in conflict with our own law, are persuasive.

■ In *Re Reynolds' Guardianship,* 60 Cal. App. (2d) 669, 141 Pac. (2d) 498, 501, the California court in referring to the "Definition of Relationship" of guardian to his ward (which we do not have in our statute but we believe it is applicable because it merely defines guardianship) said:

"This provision in the code also has been construed to mean that the guardian is therefore the trustee of his ward and exercises a delegated rather than an expressed trust as an arm of the court and subject to

its control in the discharge of his duties. (Citing case.)"

The Oklahoma court recently said in *Hartford Accident & Indemnity Co.* v. *Hembree,* Okla. Sup., 142 Pac. (2d) 618, 619,

"Where orders of approval of charges by guardian were not in evidence . . . the disallowance of such charges was justified."

Under "Guardian and Ward," 25 Am. Jur. 80, page 52, "The rule which prohibits a guardian from risking his ward's funds by investments of a speculative nature applies most strongly to his engaging those funds in any kind of business."

See *Sistrunk & Co.* v. *Navarra's Committee,* 268 Ky. 753, 105 S. W. (2d) 1039, 1040, in which it is said:

"It is an elementary principle of law that a fiduciary may not risk trust property in trade or speculation, and this rule applies even where he simply continues the business or trade of the *cestui que* trust. . . .

"Cases may sometimes occur where a ward inherits an interest in a business, and it is necessary temporarily to continue the business in order that it may be sold as a going and successful enterprise; but even in such a case the guardian must apply for and obtain an order of court authorizing him to continue the business, . . . ."

*Garrett* v. *Reed-Cashion Land & Cattle Co.,* 34 Ariz. 245, 270 Pac. 1044, is authority for the proposition that the effect of the dealing with a ward's property by the guardian without authority of the court amounted to a conversion of the property of the minor and the guardian would be liable therefor, together with interest from the date of conversion.

Appellants rely on *In re Guardianship of Sorrells,* 58 Ariz. 25, 117 Pac. (2d) 96. We do not feel that

that case is not in harmony with this decision, because apparently the lower court in this case did not find that good faith and prudence which the law requires was exercised by the guardian based on his own evidence.

Practically every jurisdiction reported in the Pacific Reporter has placed stringent limitations on a guardian's actions in that he may not bind his ward's estate, sell his ward's property, do business personally with himself as guardian, deal with the ward's property as his own without order of the Probate Court. In addition, some jurisdictions prohibit a guardian from doing business with himself, profiting for himself even without loss to the ward, in spite of the fact that he did have approval of the Probate Court. See *Bohanan* v. Riddle, 145 Okl. 301, 293 Pac. 1031; *Aubrey's Estate* v. *DeLozier,* 128 Okl. 79, 261 Pac. 192; *Francis* v. *Sperry,* 71 Okl. 260, 176 Pac. 732; *In re Anderson,* 97 Wash. 688, 167 Pac. 71; *In re Montgomery's Estate,* 140 Wash. 51, 248 Pac. 64; *Charles* v. *Witt,* 88 Kan. 484, 129 Pac. 140; *Stockyards Nat. Bank* v. *Bragg,* 67 Utah 60, 245 Pac. 966; *Mitchell* v. *McDonald,* 114 Mont. 292, 136 Pac. (2d) 536; *In re Anderson's Guardianship,* 54 Nev. 108, 7 Pac. (2d) 814.

█ In addition to his infractions mentioned the guardian did not comply with Sec. 42–104, Arizona Code Annotated 1939, regarding his inventory and his accounts, nor did he file vouchers for all expenditures in excess of $20, as provided by Sec. 38–1310, Arizona Code Annotated 1939.

█ Appellants raise the point that the court erred in not allowing the guardian to testify what the reason was for his appointment as guardian, and that the court erred in striking the answer to the question asked the gardian, ''Who asked you?'' Mean-

ing, "Who asked you to become the guardian?" The answer was, "Mrs. Skluzacek."; and said answer was stricken. It makes no difference who asked Whelan to become the guardian. He did in fact accept the position as gardian and set out on his duties of trusts and therefore is subject to the law. Furthermore, attorneys for appellants did not make an offer of proof in accordance with Section 21–923, Arizona Code Annotated 1939.

Appellant further claims the right of offset in his account as guardian with himself as an individual. The guardian sold himself lumber during the period he administered the estate and claims he is a creditor personally of his ward's estate in the sum of $7325. Both parties agree that a Court of Probate has the power to offset one account against another on equitable principles, as does a court of law or equity. Under the law heretofore cited a guardian who risks a ward's estate without order or confirmation of the court, does so at his own peril and cannot have the right to offset his personal account until he accounts for his ward's estate.

In the inventory and appraisement the guardian sets out that the net worth of the estate was $17,050.89 at the time he took possession. His final account filed July 22, 1941 showed the net worth on his "Present Balance Sheet" to be $5,536.05. On December 1, 1941 Whelan testified that the only property remaining on that date was worth $150. An offset in favor of the guardian would not be countenanced in a situation such as this.

The guardian's account, and amended account, took over some 220 pages in the abstract of record. From these accounts and the testimony adduced at the trial, the lower court found that there was due by the guardian to his ward's estate the sum of $4,125.91. No place in the record on appeal does ap-

pellant point out in what respects such a finding of the lower court was erroneous. Under such circumstances this court will not disturb the lower court's findings.

The judgment is affirmed.

McALISTER, C. J., and STANFORD, J., concur.

NOTE: ROSS, J., having disqualified, the Honorable EVO DE CONCINI, Judge of the Superior Court of Pima County, was called to sit in his stead.