# Neel *versus* Beach.

1. All the executors, whose renunciation is not of record, must join in a
conveyance of real estate.

2. Where one executor qualified and alone conveyed real estate belonging
to his testator the subsequent renunciation by the other executor did not
validate the deed.

3. An executor acts by virtue of his power to convey, and the power want-
ing, his act is a nullity.

2. Heron *v.* Hoffner, 3 Rawle 393, followed.

November 20th 1879. Before SHARSWOOD, C. J., MERCUR,
GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN,
JJ., absent.

Appeal from the Court of Common Pleas of *Washington county :*
Of October and November Term 1879, No. 277.

Chauncy Beach, of Monongahela city, Washington county,
Pennsylvania, died testate on the 19th day of May 1870. At the
time of his death he was a member of the firm of Foster, Blythe & Co.,

[Neel *v.* Beach.]

and engaged in the lumber business, building boats, furnishing mate-
rials for buildings, &c.   The firm owned, beside their stock in trade,
tools, &c., a large amount of real estate on which their mills were
erected, or used as lumber yards, &c.   The title to the larger part of
this real estate was in the firm, but some of it was in the members of
the firm as tenants in common.   By his will, Chauncy Beach gave
all his property, real and personal, to the children of his son,
Charles E. Beach.   In the third clause he makes provision for his
daughter Cordelia, in case she came to want.   In the fourth clause
he appoints Charles guardian of his own children and custodian of
their property.   In the fifth clause Charles is authorized, in case
of sickness or inability to provide for himself and family, to use
the property for that purpose.   He is also authorized to *invest* the
property in business or otherwise, as he may think best for the
estate.

In the last clause he appoints Charles E. Beach and George T.
Scott, executors, and authorizes them or the survivor to make, sign,
seal, deliver acknowledge any deed or deeds, or other writing
that may be necessary to carry out the intent and meaning of the
said will.   C. E. Beach alone took out letters testamentary on the
will.

After the death of Chauncy Beach, his son Charles E. Beach
continued the investment of his father's estate in the firm of Foster,
Blythe & Co., until the 13th day of April 1876, when he entered
into an agreement with James Neel, one of the other members of
the firm of Foster, Blythe & Co., to sell the interest of the said
Chauncy Beach in the firm property, it being an undivided one-
fourth of all the real and personal property.   The agreement was
consummated.   James Neel gave judgment notes, which were
entered as a lien in the prothonotary's office for the deferred pay-
ments, and received a deed dated April 13th 1876, acknowledged
May 16th 1876, for all the interest of Chauncy Beach in the real
estate, including that held by the partners in common.   This deed
was executed by " C. E. Beach for himself and as executor of C.
Beach, deceased," and by Elizabeth Beach, his wife, in considera-
tion of the sum of $8225.   After the consummation of the agree-
ment and the delivery of the said deed on the 17th day of April
1877, George T. Scott, the co-executor named in the will, filed his
renunciation in the register's office.   On the 21st day of April
1877, three days after the filing of the renunciation of George T.
Scott, C. E. Beach caused a writ of fieri facias to be issued on judg-
ment No. 56, August Term 1876, it being one of the judgments
for purchase-money already mentioned, and the property of James
Neel was levied upon.   James Neel then presented his petition to
the Court of Common Pleas of Washington county, setting forth
the facts, claiming that the deed of April 13th 1876, did not con-
vey him a good title, and that the execution of the said deed was

[Neel v. Beach.]

not a valid execution of the power in the will. The petitioner also offered to reconvey the property on repayment of the money already advanced on the contract. On this petition the execution was stayed and a rule granted on C. E. Beach to appear and answer. The petition was afterwards amended to embrace a prayer to open the judgment and let the defendant into a defence. To this petition C. E. Beach filed an answer, setting forth the will, the renunciation of George T. Scott, the article of agreement and contract in full, and adding an offer to correct any informality the court might think there was in the deed.

There were substantially three questions raised upon the argument in the court below:

1st. Did the renunciation of George T. Scott, filed April 17th 1877, validate the deed of C. E. Beach, executed the year before?

2d. Was the partnership real estate to be considered in law as personal estate, in such a sense as to render a formal deed by the persons authorized in the will unnecessary?

3d. Was there sufficient authority granted in the will to C. E. Beach alone to execute a deed?

The first point the court below decided adversely to the plaintiff below, saying: "Looking then at the deed as a conveyance by one of two executors empowed by will to execute such, it must be regarded in the light of Heron v. Hoffner, 3 Rawle 393, as a defective execution of the power, and therefore passing no title to the defendant."

The second point was decided the same way, the court holding that the legal title, "though held as partnership property, must nevertheless pass by proper and legal conveyance."

The third question was decided in favor of the plaintiff below, the court holding that the fifth clause of the will standing alone, which authorized Charles to "invest my property in business," conferred ample power upon him to sell, transfer and convey all the property, real and personal; and that the direction of the testator in the last section, to the executors, to make deeds, &c., did not abridge the power already given to his son Charles, in the section immediately preceding.

The court then discharged the rule at the costs of the petitioner.

Neel took this appeal and alleged that the court erred,

1. In ruling that "the sale and conveyance by Charles to the defendant, James Neel, was valid and passed a good title to the testator's interest in the real and personal assets of Foster, Blythe & Co." 2. In ruling that the "5th section of the will confers ample powers upon Charles E. Beach to sell, transfer and convey any and all of the property, real and personal, of which he was made trustee or custodian." 3. In ruling that the power given to the executors in the last clause of the will did not "abridge the

[Neel *v.* Beach.]

power already given to his son Charles in the section immediately preceding." 4. In refusing the petitioner the relief prayed for in his petition. 5. In discharging the rule to open the judgment.

*A. W. & M. Acheson, John Barton* and *Thomas H. Baird,* for plaintiff in error.—In the interpretation of the will, regard must be paid to the circumstances under which it was made. The testator possessed a large estate, consisting of real and personal property, which was already invested in the partnership of Foster, Blythe & Co.; his death would dissolve the partnership and compel a settlement of its affairs. The will authorized the continuance of the partnership if Charles thought proper so to do. Charles acted on this authority, and the partnership was carried on for years after Chauncy Beach's death, as before. Was not this the power contemplated by the testator by the use of the words " Charles may invest my property in business or otherwise as he may think best for the estate ?" But when he determined to withdraw the estate from business and sell and convey the same, must he not call upon his co-executor to join in the execution of any deed or deeds necessary to convey the title and carry out the intent and meaning of the will ? There are two powers in the will which must be harmonized, and they can be by allowing Charles to direct in what way the estate shall be used or invested; and having once done so, the executors are to make and execute all deeds necessary to give effect to the intention of the testator. If this be the true construction to be given to the two clauses of the will, then it is manifest the deed made by Charles is invalid, there having been no legal renunication of the executorship by George T. Scott at the time the deed was made to the appellant, nor until after this proceeding was commenced.

Under authority of Heron *v.* Hoffner et al., 3 Rawle 393, the court below properly ruled that the renunciation of George T. Scott could not validate the deed already executed by his co-executor.

*Alex. Wilson,* for appellee.—Authority is given to invest the property, not only in business, but in any other way. If this does not confer authority upon his son to sell, then, indeed, is the authority to invest the property otherwise an utterly barren one. If, because it was already invested in business, Charles could not sell so as to invest it in some other way, the discretion with which he is clothed by the will is taken away. The testator having given him power to invest otherwise " as he may think best for the estate," can it be that the aid of a court of equity is to be invoked to decree when and how he is to exercise this discretion ? If so, the testator's will is set aside. The question of power is one of intention. No particular form of words is necessary to confer a

[Neel v. Beach.]

power to sell.  It is enough if the intention appears in any part of the will.

If Charles E. Beach, as executor, had power to make the sale to Neel, the court below was right in refusing the relief prayed for. We submit that Mr. Scott's renunciation in writing was not necessary, but, if it should be held otherwise, then, that it having been filed before any attempt was made to enforce the payment of the purchase-money judgment, the relief prayed for was properly refused.  Was a renunciation in writing necessary?  An examination of the Acts of Assembly in relation to powers conferred by will upon executors, shows that the acting executor may exercise the powers conferred upon all, where the others either resign, refuse or renounce.  A renunciation in writing is not necessarily the best evidence that an executor named in the will declines to act.  A failure to appear in answer to a citation would be just as conclusive.  The most that can be claimed for a renunciation in writing is that it is evidence of the fact.  Any other satisfactory evidence is just as good.  The refusal of one named as executor to. assume the duties of the trust, is just as effectual to confer the whole power upon the one who takes out the letters testamentary, as if the others had filed a formal written renunciation.  But if this court should hold that Mr. Scott's renunciation in writing was necessary, we submit that the one filed of record April 17th 1877, before proceedings were commenced to collect the purchase-money judgment, was sufficient.

If, as was claimed by the defendant, Charles E. Beach, the acting executor, had no power to make the sale because the renunciation of Mr. Scott had not been filed at the date of the contract of April 13th 1876, and that the alleged imperfection in the title is removed, the payment of the purchase-money should no longer be withheld.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th 1879.

Whether the 5th paragraph in this will, considered by itself, gives Charles E. Beach power to sell and convey real estate need not be determined; for there is another paragraph which authorizes and empowers the "executors, Charles E. Beach and George F. Scott, or either of them surviving, to make, sign, seal, deliver and acknowledge any deed or deeds, or any other writing that may be necessary to carry out the intent and meaning of" the will. To ascertain the intention of any clause the whole will must be taken into view, especially the parts touching the same point.  The fifth and sixth items together are reconcilable and consistent.  By the former, in case of sickness or other inability of Charles to provide for himself and family, he is at liberty to use whatever may be necessary for that purpose; and he may invest the property in

11 NORRIS—15

[Neel *v.* Beach.]

business, or otherwise, as he may think best; and, by the latter, the executors are authorized to seal and deliver deeds, or other writings, that may be necessary to carry out the intent. The power intrusted to the executors is not a vain provision; nor is the one to Charles. It is required that the executors act in the conversion of real estate—this can only be done by them as trustees; and power is given to Charles, as an object of the testator's bounty, to use and invest property that is not permanent. If stress be put on the word invest, one of its senses is, "to surround with or place in, as property in business;" another, "to place so that it will be safe and yield a profit;" though it is commonly understood as giving money for some other property. It is not difficult to construe these provisions so both may have effect, and when that can be done the rule is, it shall be. Besides, it is reasonable that the testator should require the action of the executors for conversion of land, already a permanent investment for all the objects of his care, at the same time that he gave large power to his son for using and investing his property. The learned judge of the Common Pleas truly apprehended the main intention of the testator, which is, that all his estate shall eventually go to and be enjoyed by the children of his son Charles, excepting what may be necessary for specified uses. This also tends to show his purpose in placing the trust for sale and conveyance of his real estate in the executors. If both executors act, one alone cannot sell; if one acts, he is accountable and responsible as executor.

That all the executors, whose renunciation is not of record, must join in the conveyance was decided in Heron *v.* Hoffner, 3 Rawle 393, in an exhaustive opinion, which has been accepted law in this state for nearly half a century. It should not be overruled or explained away. By writing filed, or by citation from the register and due course of proceeding thereon, the renunciation will appear of record; and not so appearing, it ought not to be taken to exist. The present ease of adducing oral testimony to sustain or overthrow an alleged fact, should induce a rigid adherence to all the safeguards of titles to lands.

The deed by Charles E. Beach to James Neel was by one of two executors, and therefore void. Scott's subsequent renunciation does not invalidate the void act of another man. The deed was not made by the proper persons in pursuance of the power and trust. When one acting for himself conveys land for which he has a defective title, and afterwards acquires title, it shall vest in his grantee. An executor acts by virtue of a power to convey, and the power wanting, his act is a nullity. As the case stood, the judgment ought to have been opened.

It was urged, that the plaintiff can make title and is ready and willing to do so. Possibly he has not executed and tendered a conveyance, since the renunciation of Scott, because of the con-

[Neel v. Beach.]

struction given to the will in the court below. · For this reason, the case will be sent back to be further proceeded in, to the end that if the plaintiff, within a reasonable time to be fixed by said court, shall file a deed for the defendant, which the court shall adjudge to be good and sufficient as an executor's deed, under the power given to. the executors in said will, then the rule may be discharged; otherwise made absolute, in accordance with this opinion.

> Decree reversed, at the costs of appellees; and record to be remitted for further proceedings, as directed in the opinion filed.