## In re BATES' GUARDIANSHIP.

No. 8519—Opinion Filed July 30, 1918.

(174 Pac. 743.)

1. **Evidence—Judgment—Parol Evidence — Loss—Substitution.**

In case orders or judgments of courts of record are lost or not reduced to writing, upon proper application and proof satisfactory to the court, they may be supplied or substituted, but in a collateral proceeding parol testimony as to the contents of such orders or judgments is not admissible; the originals or duly authenticated copies thereof being the only competent evidence of their contents.

2. **Guardian and Ward—Guardian's Loan of Money—Power of Court.**

The county court is without authority to authorize the guardian of the property of minors to lend money belonging to the ward's estate to the guardian, himself, or by order of the court to give validity to any subterfuge in such respect.

3. **Guardian and Ward—Accounting—Credits—Reduction.**

Facts in the instant case examined, and

held, that the trial court committed no error prejudicial to the appellant in reducing in amount, items for which the guardian in his final report asked credit and to which objections were filed.

(Syllabus by Stewart, C.)

Error from District Court, Mayes County; Chas. G. Watts, Judge.

In the matter of the guardianship of Chrystal Iva Bates, minor. From an order of the court disapproving certain items of credits claimed in his final report as guardian of Chrystal Iva Bates, a minor, W. L. Bates brings error. Affirmed.

Kent V. Gay, for plaintiff in error.

J. H. Langley and A. C. Brewster, for defendant in error.

Opinion by STEWART, C. W. L. Bates was appointed by the county court as guardian of an estate belonging to his minor daughter, Chrystal Iva Bates. By order of the court, and without objection on his part, he was removed from such guardianship and required to render final account, which account was rendered, and, the court having appointed a guardian ad litem for the minor, certain objections were made to items of credit for expenditures claimed in the final report. The report filed showed on its face that the disbursements were greater than the receipts, leaving a balance due the guardian in the sum of $698, which, however, the guardian in the report generously offers to give the ward; his chief concern being for an order releasing him and his bondsmen from further liability. The county court reduced the items of credit claimed and found that the guardian was indebted to the estate in the sum of $2,188.70. On appeal to the district court, special findings were made by the court, the net result being that the guardian was held to be indebted to the estate in the sum of $1,015.30, and order was made settling the account in accordance therewith, from which order the guardian appeals to this court.

The items of disbursement to which exceptions were taken were as follows: Purchase of house and lot with funds of the minor, $1,500; building one house for minor, $500; services of guardian, $122; maintenance of ward, $360; loan to Fannie Bates, $750. The court allowed the items to which objections were not made, but reduced each of the contested items to the amount in which he found the estate received value from the expenditure shown. The item of $1,500 was reduced to $625; the item of $500, to $175; the item of $122 to $50; the item of $350, to $180; the item of $750, to $480. Deposition of the guardian was taken at Leavenworth, Kan., in which he gave testimony, over objection as to its competency, that the investments of $1,500 and $500 and the loan of $750 were made by order of the court. A number of checks on the bank in which the funds were deposited are introduced in evidence, which checks have marked thereon the approval of the county judge, and which checks the guardian testifies were used in the investments which he claims to have made for the ward. The evidence shows that the bank would not pay out money on the checks of the guardian without the approval of the county judge on each individual check; hence such approval. The interesting contention is by the appellant, that these divers and sundry checks constitute in law both petitions to the court for investment of the funds and orders permitting such investment. There is a stipulation by the parties as follows:

"It is stipulated by and between the parties hereto that there appears in the records of the county court of Mayes county, state of Oklahoma. no petition or orders of court directing the investment or payment of the following sums: $1,500 in lots 14 to 22, inclusive, in the W. T. Whitaker addition; $500. building one house; $122, service of guardian; $360, support and maintenance."

We know of no rule that, in a collateral proceeding will permit orders and judgment of courts of record to be proved by parol testimony. Such orders and judgments, or duly authenticated copies thereof, are the best and only competent evidence in such a proceeding. If the order or judgment has been in fact made but there is no record or file showing the same, the court may make a nunc pro tunc order to supply the omission; if the record or files are lost, they may be substituted by pursuing the proper method. In either case the correction should be made on proper application and proof satisfactory to the court. In Courtney v. Barnett et al., 65 Okla. 189. 166 Pac. 207, Mr. Commissioner Rummons, speaking for this court says:

"Jurisdiction is inherent in every court of record to cause its records to speak the truth, and by nunc pro tunc order, or proper application and notice, to cause to be entered orders and judgment made by the court which, by inadvertence or mistake, the clerk has omitted to record."

In the body of the opinion he further says:

"County courts in this state are courts of record, and have inherent jurisdiction over their records that pertains to all courts of record."

No such application was made, but the guardian sought by parol testimony and checks given to show that the orders were made. The parol testimony was wholly incompetent, and it would be dangerous in the extreme to hold that checks given here and there, though purporting to be approved by the county judge, would satisfy the requirements of the statutes as orders of the court to invest the funds of minors. The purported approval of such checks had no legal effect at all, but merely satisfied the banks, and the evidence shows that the then incumbent of the office of county judge was quite careless in matters pertaining to the estate involved.

As to the other items reduced, it is not claimed that the expenditures were made by court order, except the Fannie Bates matter in the sum of $750. The evidence shows that the county court made an order on December 20, 1910, purporting to authorize the guardian to loan himself out of the ward's estate the sum of $750 to be secured by chattel mortgage on certain property belonging to him, which mortgage was executed and the $750 appropriated by the guardian. It appears that he was about to have trouble because of inability to replace the money, and that, in order to relieve him, the county judge made an order that the chattel mortgage be released and the loan transferred to Fannie Bates, a relative, who gave a mortgage on real estate of doubtful value to secure the payment of the money. There is evidence to show that Fannie Bates was merely giving additional security for the obligation of the guardian and that she gave no note for the money. Orders of a court of record valid on their face cannot be attacked collaterally, but the proceedings as to the $750 are so irregular and unconscionable as to carry with them the badge of fraud and to be vulnerable to attack by objections to the final report, in which the guardian by means of such invalid orders seeks to be relieved from liability for loss to the estate arising from the inadequate security taken. The county court is without authority to authorize a guardian to lend funds of the estate on securities offered by the guardian himself, or by order of court to give validity to any subterfuge in said respect.

The trial court heard testimony as to the value of the property purchased by the guardian, the house constructed by him, the value of the real estate securing the $750, and the value to the estate of the other disbursements made and services rendered to which objections were made, and allowed the guardian credit for the value found in each particular case. We are inclined to believe that the court was extremely liberal to the guardian. In fact, from the evidence before us, we think the estate has suffered by the unauthorized acts of the guardian in a much greater amount than the total sum found by the court. As to the investments made without authority and the money loaned, the court could have wholly disregarded the same and held the guardian to a strict account for the moneys so expended; but, it being the view of the court that the interests of the estate, under the circumstances would be conserved best by accepting the result to the extent of its value, allowing the guardian credit accordingly and so settling the account, the guardian cannot complain, and, in the absence of error assigned by the other side, we feel that the order and judgment of the court should not be disturbed.

The judgment is affirmed.

By the Court: It is so ordered.