## Appeal of JOHN B. NORDHOLT.

Docket No. 3766.   Decided July 29, 1926.

The fair market value of shares of stock, received by the taxpayer as compensation for personal services, determined.

*Thomas O. Marlar, Esq.*, and *Harry J. Gerrity, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the Commissioner.

Before MARQUETTE, GREEN, and LOVE.

This appeal is from the determination by the Commissioner of a deficiency for the year 1916 in the amount of $712.08, consisting of a proposed additional tax in the amount of $474.72 and a penalty in the amount of $237.36 added to the tax for failure on the part of the taxpayer to file an income-tax return for the year 1916.

FINDINGS OF FACT.

The taxpayer is an individual residing at Toledo, Ohio.

The Toledo Steel Casting Co. is a corporation organized in the year 1904 under the laws of the State of Ohio. On July 30, 1912, the outstanding capital stock of the corporation consisted of 850 shares of preferred stock of the par value of $100 each, of which 844 shares were held by S. D. Carr and Curtis T. Johnson. At that time the corporation had a book deficit or impairment of capital in the amount of about $33,000, due to operating losses in prior years.

On July 30, 1912, The Toledo Steel Casting Co. and S. D. Carr and Curtis T. Johnson entered into a contract with the taxpayer and Clarence C. Smith, by which the taxpayer and Smith agreed to assume the management of the company for a joint compensation of $5,000 per annum, the transfer to them by Carr and Johnson of $42,500 par value of the company's stock when the net value of the company's assets should have increased by $50,000, and the issuance to them by the company of $15,000 par value additional stock, when the "stock and materials on hand, plus good and collectible credits, accounts, notes and bills receivable, shall equal the unsecured indebtedness of" the company. The contract stipulated that the net value of the company's assets at that time was $80,523.67.

In November, 1916, Carr and Johnson transferred to the taxpayer and Clarence C. Smith, as compensation under the contract of July 30, 1912, capital stock of The Toledo Steel Casting Co. of the par value of $42,500, which was divided between them in equal amounts.

The assets and liabilities of The Toledo Steel Casting Co. on December 31, 1912, 1913, 1914, 1915 and 1916, respectively, as shown by its books, were as follows:

|  | 1912 | 1913 | 1914 | 1915 | 1916 |
|---|---|---|---|---|---|
| Assets | $233,196.68 | $230,234.56 | $239,053.00 | $264,969.14 | $304,670.32 |
| Liabilities other than capital stock | 181,595.73 | 178,027.04 | 171,498.21 | 180,805.67 | 182,350.72 |
| Capital stock | 85,000.00 | 85,000.00 | 85,000.00 | 85,000.00 | 85,000.00 |
| Surplus or deficits | 33,399.05 | 32,792.48 | 17,445.21 | 836.33 | 36,819.60 |

The capital stock of The Toledo Steel Casting Co. is and has at all times been closely held. There were no sales of the stock between July 30, 1912, and the end of the year 1916, it having been held in trust during that period to guarantee performance of the stockholders' liability under the contract of July 30, 1912. A few small lots of the stock were sold during the years 1919, 1920, and 1921, the purchaser in nearly every instance being a relative of the taxpayer.

The fair market or reasonable value of the capital stock of The Toledo Steel Casting Co. in November, 1916, was at least $100 per share.

The taxpayer did not file an income-tax return for the year 1916, and a return was made for him by the Commissioner sometime subsequent to the enactment of the Revenue Act of 1918. The Commissioner determined that the capital stock of The Toledo Steel Casting Co. received by the taxpayer in the year 1916, for services rendered by him under the contract of July 30, 1912, had a value of $21,250 at the time of its receipt by the taxpayer, and he included that amount in the taxpayer's income for that year and determined that there is a deficiency in tax for the year 1916, in the amount of $474.72, to which he added 50 per cent of the amount of the tax as a penalty for failure to file an income-tax return within the time prescribed by law.

### OPINION.

MARQUETTE: The taxpayer concedes that the stock of The Toledo Steel Casting Co. received by him in the year 1916 as compensation for services performed by him under the contract of July 30, 1912, would constitute income to him in that year to the extent of its fair market value. He contends, however, that the stock in question had only a nominal value at the time and that, therefore, he received no taxable income. The Commissioner contends that, upon the receipt of the stock, the taxpayer realized income in the amount of the market or reasonable value of the stock, which market or reasonable value he has determined to be equal to its par value.

The Commissioner's determination as to the value of the stock was made under authority of section 2(a) of the Revenue Act of 1916, and under article 4, paragraph 21, of Regulations 33, pertaining to the Revenue Act of 1916, which respectively provide in part as follows:

Section 2(a) of the Revenue Act of 1916:

That, subject only to such exemptions and deductions as are hereinafter allowed, the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid. * * *

Article 4, paragraph 21, of Regulations 33:

*Compensation not paid in money.*—Where service is rendered for a stipulated price, wage, or salary and paid with something other than money, the stipulated value of service in terms of money is the value at which the thing taken in payment is to be considered for the purpose of the income tax.

Where there is no stipulation as to the value of service and payment for service is made with something other than money, the *market or reasonable value* of the thing taken in payment is the amount to be included as income for the purposes of the income tax. (Italics ours.)

Income is, for purposes of taxation, measured in money, and therefore since, by section 2(a) of the Revenue Act of 1916, the net income of taxable persons includes income derived from compensation for personal service of whatever kind and in whatever form paid, where compensation for such services is paid with something other than money, it is necessary to express that " something " in terms of money in order that the tax due thereon may be determined. The Commissioner, with the approval of the Secretary, has made and promulgated the above-quoted regulation as a basis for expressing in terms of money compensation paid in something other than money. The regulation provides a reasonable basis for such expression, and is, we think, not inconsistent or in conflict with any statutory provision.

The evidence herein clearly shows, and it is conceded by the taxpayer, that in the year 1916 the taxpayer received as compensation for services rendered by him stock of The Toledo Steel Casting Co. of the par value of $21,250. It likewise shows that the stock was closely held and that there were no sales or efforts to make sales thereof during the year 1916. In fact, there were no sales of stock until the year 1919. However, the absence of sales in the year 1916 does not in itself prove that the stock had no market or reasonable value at that time, nor do the sales made in the year 1919 and later years establish value for the stock in the year 1916, since conditions existing in those years were materially different from conditions existing in the year 1916. The evidence shows that The Toledo Steel Casting Co. had been making money for several years prior to the year 1916 and that during the year 1916 it made a net profit of more than $37,000. During the period January 1, 1913, to December 31, 1916, inclusive, the book value of the company's stock had increased from approximately $52,000 to about $122,000, and each share of its capital stock had a book value on December 31, 1916, of at least $142 per share. The business at that time was good and industry was flourishing, and there was every reason to believe that the existing prosperity would continue. The evidence herein not only fails to establish that the stock in question did not have a market or reasonable value when received by the taxpayer, but, on the other hand, supports the determination of the

Commissioner that its value was at least $100 per share. We must therefore approve the action of the Commissioner.

The next question involves the 50 per cent penalty which was added to the taxpayer's tax for the year 1916 for failure to file an income-tax return for that year. The record fails to show definitely when the return on behalf of the taxpayer was made by the Commissioner, but it is clear that it was made after the enactment of the Revenue Act of 1918, pursuant to the authority of section 3176, Rev. Stats., as amended by the Revenue Act of 1918. That section, as amended, was reenacted without change in the Revenue Act of 1921 and was not changed by the Revenue Act of 1924. It provides that—

Sec. 3176. If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. In any such case the Commissioner may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector. Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes.

If the failure to file a return or list is due to sickness or absence, the collector may allow such further time, not exceeding thirty days, for making and filing the return or list as he deems proper.

The Commissioner of Internal Revenue shall determine and assess all taxes, other than stamp taxes, as to which returns or lists are so made under the provisions of this section. In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner of Internal Revenue shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax. In case a false or fraudulent return or list is willfully made, the Commissioner of Internal Revenue shall add to the tax 50 per centum of its amount.

The amount so added to any tax shall be collected at the same time and in the same manner and as part of the tax unless the tax has been paid before the discovery of the neglect, falsity, or fraud, in which case the amount so added shall be collected in the same manner as the tax.

It is not necessary to enter into an extended discussion on this point. The statute clearly and explicitly provides that if any person, corporation, company, or association, fails to make and file a return or list at the time prescribed by law, the Commissioner shall add to the tax due from such person, corporation, company or association 25 per cent of its amount, except when a return is filed after such time and it is shown that the failure to file was due to a reasonable cause and not to willful neglect.

In this case, it appears that the taxpayer did not file any return for the year 1916 and that a return was made by the Commissioner under the provisions of section 3176, Rev. Stats., as amended by the Revenue Act of 1918. Since no return was filed by the taxpayer, it was mandatory upon the Commissioner to assess the penalty provided by section 3176 Rev. Stats., as amended, regardless of the fact that such failure to file might have been due to reasonable cause and not to willful neglect. The Commissioner, however, clearly had no authority to add to the tax a penalty of more than 25 per cent of the tax.

The taxpayer in his petition alleged that he is entitled to deduct, in computing his net income for the year 1916, certain interest and taxes paid by him in that year. These allegations were denied by the Commissioner and the taxpayer has failed to produce any evidence in support thereof. His claim for these deductions is therefore denied.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*