FIDELITY & CASUALTY COMPANY OF NEW YORK v.
STATE EX REL. ANDERSON ET AL.

[No. 14,473. Filed March 30, 1933. Rehearing denied June 30, 1933. Transfer denied April 20, 1934.]

486

*Albert W. Funkhouser, Arthur F. Funkhouser,* and *Ben J. Biederwolf,* for appellant.

*A. W. McGinnis, Richard Walker, Richard R. McGinnis,* and *Charles M. La Follette,* for appellees.

WOOD, J.—The parties to this action will hereafter be designated and referred to as follows: the appellant, as appellant; the appellee, State of Indiana on relation of Edna Howey Anderson, guardian of Esther Carroll Howey, a minor, as the guardian; the appellee Citizens Trust & Savings Bank, as the bank, and Joseph M. Howey, as Howey.

The guardian as successor to Howey, as guardian, brought suit against the appellant as surety on the bond of Howey, for conversion of a $1,000 U. S. Liberty Loan Bond, the property of his ward, which it was alleged Howey unlawfully deposited with the bank as collateral security, for a personal loan which it made to Howey. Upon the motion of appellant, the bank was made a party defendant to the original complaint. Appellant filed an answer in general denial to the guardian's complaint, and also filed a cross-complaint against its co-defendant, the bank, in which it admitted that it was surety upon Howey's bond as guardian, but alleging that Howey deposited said bond with the bank as collateral security for a personal loan to him; that the bank had no title in or right to the possession of said bond, except as collateral security to the personal loan to Howey; that the bank had refused and still refuses to deliver the possession of said bond to the guardian. This cross-complaint closed with a prayer asking that an order and judgment be entered requiring the bank to surrender the possession of the bond to the guardian of Esther Carroll Howey, and account to her for all interest theretofore collected by the bank on said bond. The bank filed a demurrer to this cross-complaint which was overruled, and it filed an answer in general denial.

Upon these issues the cause was tried by the court without a jury. Judgment was rendered against appellant on the guardian's complaint, and against appellant and in favor of the bank on appellant's cross-complaint. The appellant filed a motion for a new trial for the following causes: "(1) Error in the assessment of recovery, in this, the amount is too large; (2) the decision of the court is not sustained by sufficient evidence ; (3) the decision of the court is contrary to law." This motion was overruled. Appellant appeals, assigning as error the overruling of its motion for a new trial.

December 7, 1931, appellee guardian filed in the office of the clerk of this court a pleading designated as a cross-assignment of errors. This pleading is not written upon, attached to, nor does it in any manner form a part of the transcript. For that reason no question is thereby presented to this court for its consideration. *Dutton* v. *Dutton* (1868), 30 Ind. 452; *Merchants, etc., Bank* v. *Delaware School* (1916), 185 Ind. 658, 115 N. E. 450; Ewbank's Manual (2d. Ed.) Sec. 125; Sec. 719, Burns 1926 (§2-3225, Burns 1933, §502, Baldwin's 1934).

The facts were stipulated between the parties to this cause. Those necessary to a consideration of this appeal are substantially as follows: September 20, 1918, by an order of the Probate Commissioner of the Vanderburgh Circuit Court, Howey was appointed guardian of the person and estate of Esther Carroll Howey, a minor. He qualified by executing a bond for the faithful discharge of his duties with the appellant as surety, and continued to act as guardian until November 7, 1928, at which time he died testate. His estate was insolvent, the total amount thereof being only $2.16. Appellant was approved as surety on the bond and continued in that capacity until Howey's death. The guardian, one of the appellees herein, was appointed as Howey's successor on November 13, 1928, by the Probate Court of Vanderburgh County, and she qualified to perform the duties of her trust as the law requires. December 19, 1928, the administrator with the will annexed of Howey's estate, pursuant to an order of the Vanderburgh Probate Court, transferred, assigned, and delivered possession of all the assets of the guardianship estate of Esther Carroll Howey, which had come into his possession and control as administrator of the Howey estate, to the appellee guardian, as successor to Howey, "without prejudice to the right of said guardian

to bring any action at law or in equity against any person or corporation liable for any losses sustained by said guardianship estate during the time that said Joseph M. Howey was guardian of said minor, and without prejudice to the rights and . . . defenses of the Citizens Trust & Savings Bank as pledgee of one $1,000 Liberty Bond now held by it as a collateral security for a loan made to said Joseph M. Howey, deceased, as shown in the report (of the administration of the Howey estate) hereinabove approved by the court, and without prejudice to the rights and . . . defenses of the Fidelity and Casualty Company of New York, surety on the guardianship bond of said Joseph M. Howey, deceased, to any actions which might be brought by said guardian on said bond." March 11, 1922, Howey filed a petition in the guardianship proceedings of his ward, in the Vanderburgh Probate Court in which he alleged that he was her father; that she was four years of age and lived with her parents; that her estate consisted of United States Government bonds of the par value of $4,000 and a savings deposit in the Citizens Trust & Savings Bank in the sum of $269.40, and no real estate; that he, Howey, owned and operated a grocery and a meat market in the city of Evansville; that he had entered into a contract to purchase the real estate and building occupied by said business from one Meyer, the owner thereof, the purchase price to be $4,600, payable in yearly installments evidenced by his notes; that he had paid the first purchase money note and interest and the sum of $350 on the second note which was due and payable; that because of depression in business in common with all other persons during the past year he was not able to pay the second note; that he desired to borrow the sum of $750 for a period of nine months, with which to pay the balance due on said note; that the bank would loan him the money to

pay the note and would accept said United States Government bonds as collateral security in an amount sufficient to secure such loan; that the present cash market value of the real estate was $5,500; that his business had revived and was now a good paying business; that he could pay the loan at maturity; that upon payment to Meyer of the amount of the purchase money note (being Howey's individual note) he, Meyer, would assign it to Howey as guardian. This petition closed with a prayer that Howey be authorized to secure the loan from the bank, deposit the bonds as collateral security; and accept an assignment of his note from Meyer to himself as guardian. On the same day the court made an order authorizing the loan pursuant to the terms and conditions set out in the petition and prayer thereto. Howey's note to the bank was not paid at maturity.

February 18, 1924, Howey, as guardian, presented a second petition to the Vanderburgh Probate Court, in which he alleged that he had heretofore given his note for $750 bearing interest *at six per cent*, for moneys which he had therefore used in accordance with the previous order of the court; that an extension of time for repayment by him of $750 for a period of one year from February 13, 1924, at the same rate of interest heretofore paid, and with the same securities, would be to the best interest of said trust; that within the extension of time the loan with interest would be paid; that as added security he would execute a chattel mortgage on his personal property consisting of a stock of merchandise and groceries of the estimated value of $3,000; that as the merchandise was disposed of in course of trade the net proceeds would be applied in payment of the debt. This petition closed with a prayer in harmony with the allegations thereof. On the same day the court granted this petition.

On March 13, 1922, after the order of the court entered on March 11 of that year, the bank loaned Howey personally $713.55, receiving his note as evidence due *six months* after date with interest at *seven* per cent, and Howey deposited with the bank as collateral security one $1,000 United States Fourth Liberty Loan Bond No. D00985424, which was the property of Esther Carroll Howey, and was held by Howey as her guardian. There were no subsequent orders made by the Vanderburgh Probate Court authorizing the renewal of said original note except the order heretofore referred to dated February 18, 1924. But as appears from the record without any order having been made by the court authorizing such action, the note was renewed and reduced in amount by payments from time to time until October 13, 1928, when the last note given to the bank by Howey previous to his death was executed for the principal sum of $413. This note, including principal and interest, was unpaid when Howey died.

It was due ninety days after date, instead of one year after date, and provided for interest at seven per cent instead of six per cent as provided in the petition and order of February 18, 1924. In fact, so far as the record discloses, there was no petition filed or order made in the guardianship proceeding, authorizing the giving of this particular note, or the posting of the bond as collateral security. The bank had full and actual knowledge of the terms of the petition and order made by the court in response thereto, on March 11, 1922, prior to the time that it loaned the money to Howey and accepted the bond as collateral security for its payment, it held possession of said bond continuously from March 13, 1922, as collateral security for the payment of said original note and all renewal notes, and had possession of said bond at the time of the

trial of this cause in the lower court. It had no right, title, or interest in said bond except as collateral security for the payment of Howey's individual note; the guardian made a demand upon the bank for the return and possession of the bond previous to the bringing of this action which was refused. The appellant denied liability on Howey's bond as guardian and no part of the relief asked for in the complaint had been received or granted at the time of bringing this action. Esther Carroll Howey was a female minor and at the time of trial was unmarried. The record does not disclose whether Howey ever filed reports of his administration of the trust as required by law.

From the facts thus stipulated, the court made a general finding as follows:

"And the court having heard the argument of counsel and being in all things duly advised in the premises, now finds for the plaintiff upon her complaint against the defendant, Fidelity and Casualty Company of New York, and said defendant is indebted to the plaintiff in the sum of Four Hundred and Thirteen Dollars ($413.00), together with interest thereon at six per cent per annum from the 13th day of October, 1928.

"And the court further finds for the plaintiff and against both defendants that the order of this court heretofore made in the matter of the Guardianship estate of Esther Carroll Howey, a minor on the 11th day of March, 1922, is and the same should be held void.

"And the court further finds for the plaintiff and against both defendants that the order heretofore made in this court in the matter of the Guardianship estate of Esther Carroll Howey, a minor on the 18th day of February, 1924, is and the same should be held void.

"And the court further finds for the plaintiff and against the defendant Fidelity and Casualty Company of New York, that the plaintiff should recover against said defendants her costs in this action laid out and expended.

"And the court further finds that the defendant

Fidelity and Casualty Company of New York should take nothing under and by virtue of its cross-complaint against the defendant Citizens Trust and Savings Bank of Evansville, Indiana, and the court finds in favor of the defendant, Citizens Trust and Savings Bank of Evansville, Indiana, on its answer to the aforesaid cross-complaint."

Upon this finding the court rendered the following judgment:

"IT IS, THEREFORE, ordered, adjudged and decreed by the court that the plaintiff recover judgment against the defendant, Fidelity and Casualty Company of New York in the sum of Four Hundred and Thirteen Dollars ($413.00), together with interest thereon at six per cent per annum from the 13th day of October, 1928, and that the plaintiff recover her costs in this action laid out and expended against said defendant.

"IT IS FURTHER ordered, adjudged and decreed by the court that the order of this court heretofore made in the matter of the Guardianship estate of Esther Carroll Howey, a minor, on the 11th day of March, 1922, be and the same is hereby declared void.

"IT IS FURTHER ordered, adjudged and decreed by the court that the order of this court heretofore made on the 18th day of February, 1924, in the matter of the Guardianship estate of Esther Carroll Howey, a minor, be and the same is hereby declared and held void.

"IT IS FURTHER ordered, adjudged, and decreed by the court that the defendant Fidelity and Casualty Company of New York take nothing under and by virtue of its cross-complaint against the defendant, Citizens Trust and Savings Bank of Evansville, Indiana, and that the defendant, Citizens Trust & Savings Bank of Evansville, Indiana, as to said cross-complaint go hence without day.

"IT IS FURTHER directed, ordered and adjudged by the court that the plaintiff appropriate and use the proceeds of the judgment herein granted to the plaintiff against the defendant Fidelity and Casualty Company of New York for the purpose of redeeming the bond now held by the

defendant, Citizens Trust and Savings Bank of Evansville, Indiana, and after the redemption thereof to return the same into the assets of the Guardianship estate of Esther Carroll Howey, a minor."

The facts presented by this record are novel and unusual, and exhibit a course of procedure and conduct in the administration of the guardianship of a minor ward, which is shocking and would be almost unbelievable did they not appear upon the record of one of the probate courts in this state.

The disposition of this case depends in some measure upon the validity of the two orders made by the Vanderburgh Probate Court authorizing Howey to deposit bonds of his ward with the bank as collateral security for a personal loan made to him by the bank. Neither the appellee, the guardian, previous to bringing suit against the appellant as surety upon her predecessor's bond to recover for a breach thereof, nor the appellant, previous to filing its cross-complaint against its co-defendant, the bank, demanding a return of the ward's bond to the guardian, took any steps in the nature of a direct attack to have the two orders of the court authorizing the loan and deposit of the ward's bond as collateral security therefor set aside; so the complaint of the guardian, and the cross-complaint of the appellant are collateral attacks upon the two orders made by the court.

It is well settled by the authorities in this state, that if the court has jurisdiction of the subject matter and the parties, it has the right to determine the issues tendered, wrong as well as right, and under such circumstances, even though the proceedings may be irregular or erroneous, the judgment of the court is not subject to collateral attack; that it is only when the judgment is void for some cause that

it can be attacked collaterally. *Eliason* v. *Bronnenberg* (1896), 147 Ind. 248, 46 N. E. 582.

The appellant and the guardian insist that the two orders of the court were void, and therefore subject to collateral attack, while the bank insists that at most the two orders were only voidable, and therefore not subject to collateral attack. Basings its argument upon the premises that the two orders were void, the appellant insists that the depositing of the ward's bond with the bank under the attending circumstances was unlawful from its inception; that the bank's possession is without any right whatever, and the probate court should have found for appellant on its cross-complaint, entering an order requiring the bank to return the bond in its possession to the guardian. While, arguing from the same premise, the guardian contends that inasmuch as the orders were void when Howey deposited the bond of his ward with the bank in the manner and for the purpose disclosed by the facts in this case, it amounted to an unlawful conversion by him which constituted a breach of his bond as guardian, and that appellant should be required to respond to her ward's estate for any damages suffered by reason of such conversion.

If the two orders were in fact void, then it must follow as a necessary conclusion, that the deposit of the ward's bond with the bank as collateral security for the personal debt of the guardian constituted an unlawful conversion of his ward's property, and the appellant would be liable as surety upon Howey's guardianship bond for any damage sustained by his ward's estate. *State ex rel. Cavins* v. *Sanders* (1878), 62 Ind. 562; *Hogshead* v. *State ex rel. Allen* (1889), 120 Ind. 327, 22 N. E. 330; 28 C. J., p. 1136, §225b. On the other hand, if, as contended by appellee bank, the two orders are only voidable, then it must follow, that the deposit of the bond of the ward with the bank pursuant

to such orders, did not constitute a breach of the guardianship bond by Howey, and the appellant would not be liable upon such bond as surety until such orders were modified or set aside.

Probate courts have no common law jurisdiction. The nature, extent, and exercise of their jurisdiction depends upon the terms and breadth of the constitutional or statutory grant. They cannot exercise any powers other than those which have been expressly conferred, or are necessarily implied from those expressly conferred. Their powers are not to be extended by construction or unnecessary implication. 15 C. J., p. 1011, §426. The Vanderburgh Probate Court was created and its jurisdiction defined by Acts 1919, p. 494. It has original exclusive jurisdiction in all matters pertaining to the appointment of guardians and the administration and settlement of estates of minors and all other probate matters within the county. Sec. 3380, Burns 1926 (§8-101, Burns 1933, §3418, Baldwin's 1934), provides that the court having probate jurisdiction in each county shall appoint guardians for minors resident in such county or having an estate therein. The probate jurisdiction of the Vanderburgh Probate Court is separate and distinct from any jurisdiction which it may possess over civil causes, so the method of procedure prescribed by the Code in probate matters must be pursued. *Noble* v. *McGinnis* (1877), 55 Ind. 528; *Harrison* v. *Culbertson* (1896), 147 Ind. 611, 45 N. E. 657.

In their briefs, both appellees assume that the orders of the court, authorizing the deposit of the ward's bond as collateral security, were made upon the theory of a change of investment. The only power vested in a probate court to authorize a change of investment of the ward's estate is that given in Sec. 3391, Burns 1926 (§8-112, Burns 1933, §3434, Baldwin's 1934), reading

as follows: "The proper court may, on application of a guardian, or any other person (said guardian having notice thereof), order and decree any change to be made in the investment of the estate of any ward, that may, to such court, seem advantageous to such estate."

By no method of reasoning can the orders of the court be interpreted as authorizing a change of investment of the ward's estate. When stripped of all formality these orders amount to nothing more than a permission for Howey to appropriate his ward's securities to his own personal use and profit, thus creating a condition in absolute violation of the strict rules of law governing the relation between a guardian and his ward, for guardianships are the most important and delicate trusts known to the law; the same principles apply to them as other trusts, but with a larger and more comprehensive efficiency. Howey could not of his own motion, whether prompted by honest or fraudulent motives, place himself in a position where his interests would in any way conflict with his duties as guardian. *Taylor* v. *Colvert* (1893), 138 Ind. 67, 37 N. E. 531; *State ex rel. Cavins* v. *Sanders, supra*. Nor do we think that the court under the subterfuge of a change of investment, had any jurisdiction under our Code, to make an order permitting him to do so.

*In Re Bates Guardianship* (1918), 70 Okla. 321, 174 Pac. 743, was a case where the court made an order authorizing a guardian to loan himself $750 to be secured by a chattel mortgage. He was later removed from the trust and ordered to file a final report. Exceptions were filed to this report. In commenting upon this loan the court said: "The evidence shows that the county court made an order on December 20, 1919, purporting to authorize the guardian to loan himself out of the ward's estate the sum of $750 to be secured

by chattel mortgage on certain property belonging to him, which mortgage was executed and the $750 appropriated by the guardian. It appears that he was about to have trouble because of inability to replace the money, and that, in order to relieve him, the county judge made an order that the chattel mortgage be released and the loan transferred to Fannie Bates, a relative who gave a mortgage on real estate of doubtful value to secure the payment of money. There is evidence to show that Fannie Bates was merely giving additional security for the obligation of the guardian and that she gave no note for the money. Orders of a court of record valid on their face cannot be attacked collaterally, but the proceedings as to the $750 are so irregular and unconscionable as to carry with them the badge of fraud and to be vulnerable to attack by objections to the final report, in which the guardian by means of such invalid orders seeks to be relieved from liability for loss to the estate arising from the inadequate security taken. The county court is without authority to authorize a guardian to lend funds of the estate on securities offered by the guardian himself, or by order of court to give validity to any subterfuge in such respect."

In the case of *Fidelity, etc., Co. of Maryland* v. *Freud* (1911), 115 Md. 29, 80 Atl. 603, the Orphan's Court of Baltimore city, with one of its members dissenting, passed an order authorizing the appellee as guardian; to invest in a promissory note, to be executed by himself individually, $1,500 of the money of his ward. Appellant as surety on the guardian's bond objected to the order, recognizing the loan as an investment, this objection was overruled and from this ruling of the court, appellant prosecuted its appeal. After quoting the sections of the Maryland Code defining the power and jurisdiction of orphan's courts, the court of appeals,

in reversing the cause, said: "These provisions fully authorize the orphans' court to direct investments by guardians in such *good. security* as they may approve, in the exercise of a sound judicial discretion; but the question here to be determined is whether an order for a loan of the ward's money to the guardian himself is within the power thus conferred. We can have no hesitation in answering this question in the negative. An investment, if such it may be called, in which the guardian has a personal interest adverse to that of the ward is manifestly not entitled to be regarded as a 'good security.' One of the rules universally recognized as applicable to every fiduciary is that which prohibits him from borrowing the trust funds, 'or going through the form of borrowing, for his own use.' (Citing authorities.) It was said by Lord Ellenborough, in 1 Camp. 537, as quoted in *Ricketts* v. *Montgomery,* 15 Md. 51, that: 'No man should be allowed to have an interest against his duty.' It has been declared by this court that no one having fiduciary duties to discharge should 'be allowed to enter into any engagements in which he has, or can have, a personal interest conflicting, or which may possibly conflict, with the interests of those whom he is bound to protect.' (Citing authorities.) The reason upon which it is founded is too obvious to need discussion.

"There is nothing in the statutory provisions to which we have referred to justify the inference that they were intended to authorize the orphans' courts to allow the disregard of the salutary rule just stated. Certainly a power to order 'investments' in 'securities' cannot be held to support an affirmative permission to a guardian to retain and use the money of his ward, merely upon a promise of repayment. This is in reality no investment at all.

"The retention of money in the hands of the investor

cannot be said to amount to an 'investment.' The accepted definitions of that term, as well as its derivation, involve the idea of the *clothing* or *investiture* of the fund with new and different attributes. To 'invest' according to 23 Cyc. 348, means: 'To convert into some other form of wealth, usually of a more or less permanent nature.' Webster's New International Dictionary definies an 'investment' to be 'the laying out of money in the purchase of some species of property, especially a source of income or profit.' In *Neal* v. *Beach* (1879), 92 Pa. 221, the term was said to be 'commonly understood as giving money for some other property;' and it has also been defined to be the 'laying out of money in such manner that it may produce a revenue.' (Citing authorities.)

"It is perfectly apparent that the transaction presented in this record is very far from being described by any of the definitions we have quoted. The order complained of authorized the guardian 'to withdraw from the fund on deposit in the Eutaw Savings Bank in the name of said minor the sum of fifteen hundred dollars and to invest the same' in his own promissory note, 'payable twelve months after date, with interest at 6 per cent per annum.' This was equivalent to directing the guardian to 'invest' the money by simply retaining it in his own possession. In our opinion, the orphans' court was without jurisdiction to pass such an order, and the guardian should be required to account for the fund as cash in his hands uninvested."

*Sowers* v. *Pollock* (1923), 112 Kan. 599, 212 Pac. 103, 30 A. L. R. 458, was a suit upon a guardian's bond to recover for funds of his ward, a daughter, converted to his own use. The probate court had entered an order authorizing the guardian to loan the money to himself. This order was not set aside before suit, and was interposed as a defense to the action by the sureties upon

the guardian's bond. The court, in affirming a judgment against the sureties, said: "Although of limited jurisdiction, a probate court has full power to adjudicate matters which come within the jurisdiction conferred by Constitution and statute; and its judgments rendered within the prescribed limits, however erroneous, are ordinarily conclusive unless reversed and set aside in appropriate proceedings. If it acts outside of its powers or its action is obviously fraudulent, the judgment rendered may be treated as a nullity. Here the court has power to authorize and approve loans of the ward's money by the guardian. (Citing authorities.) It had no power, however, to direct or permit the guardian to use the money of the ward for his own purpose. The loan to himself was in fact not a loan within the meaning of the statute cited. It has been expressly held that 'a guardian may not trade with himself on account of the ward, or use or deal with his ward's property for his own benefit.' (Citing authority.)

"The court had no more authority to direct or approve a loan of the ward's money by the guardian to himself than he would have had to have directed a loan of the funds to the judge who made the order. His order was of no more effect than if he had authorized the guardian to use it in the purchase of lottery tickets in a bucket-shop deal or in any gambling transaction. In borrowing the ward's money, the guardian became both borrower and lender, relationships in which his personal interest was brought into direct conflict with the interest of the ward, to whom he was bound to protect." And the court closed its opinion with this concise statement: "The order made by the probate court in this instance was void and subject to collateral attack. It afforded no protection to the sureties on the guardian's bond, and therefore the judgment of the court is affirmed."

Applying the principles of law announced in the above cases to the facts in the instant case, it is apparent that the Vanderburgh Probate Court was without jurisdiction under our Code to enter the two orders and that they were void.

Both the appellees insist that the cross-complaint of appellant did not allege any facts germane to the original cause of action and therefore has no place in this proceeding. The view we take of the facts and law in this case does not make it necessary for us to express an opinion on that question.

The bank had full knowledge of all the facts and circumstances in connection with the loan to Howey before it was made and the ward's bond deposited with it as collateral security. It is settled in this state, that one who knowingly receives trust money or property from a trustee, in satisfaction of his own individual debt, must be regarded as participating in the fraudulent diversion of the property and is liable to the beneficiary under the trust. *Wallace* v. *Brown* (1872), 41 Ind. 436. A guardian is trustee of the property of an infant, and persons dealing with him are bound to take notice of that fact. 28 C. J., p. 1123, §204.

The report of the administration of the guardianship by Howey made to the court by his administrator, and the surrender by him to the guardian, successor to Howey, of all property belonging to the ward's estate, received as such administrator, even though approved by the court was not a final settlement as contemplated by the statute. *State ex rel. Little* v. *Parsons* (1896), 147 Ind. 579, 47 N. E. 17. It was stipulated, however, in the order of the court approving the report, that the rights of interested parties should not be prejudiced thereby. Inasmuch as there has never been any final settlement made and the guardian

discharged the entire trust is *in fieri*. *Ex parte* orders, current reports, and other proceedings passed upon by the court during the pendency of the trust are *prima facie* correct, but remain within the control of the court, so that before final settlement and discharge of the guardian, they may be set aside, modified, or corrected, if the requirements of justice demand such action. "The court (has) the power to open up the whole matter of allowances and orders previously made, if any sufficient reason in law or equity (are) shown to justify such action." *State ex rel.* v. *Peterson* (1905), 36 Ind. App. 269, 75 N. E. 602; *Huffman* v. *Huffman* (1912), 51 Ind. App. 330, 99 N. E. 769.

While the cause is still *in fieri*, the court may alter, correct, or set aside its former ruling, order or judgment, without notice to the parties. *Livingston* v. *Livingston* (1920), 190 Ind. 223, 130 N. E. 122; *Warner* v. *State* (1923), 194 Ind. 426, 143 N. E. 288.

If the judgment of the lower court should be carried out, it would result in an anomalous situation. The appellant would pay the amount of Howey's debt to the guardian, who in turn would pay the bank the debt owing to it by Howey, whereupon the bank would surrender the ward's bond, to which it had no right whatsoever to the guardian who is Howey's successor. The ward's estate would sustain no loss and there would be no liability upon Howey's bond as guardian, for which the appellant would be holden. This judgment, if carried out, would indirectly compel the appellant to pay the individual debt of Howey. This appellant did not agree to do.

The court's first duty in the instant case, was to protect the ward's estate, the law required it, justice demanded it. All the parties were before the court and it was completely advised of all facts and circum-

stances attending the deposit of the ward's bond with the bank. The bond had not been lost, destroyed, or otherwise disposed of, in such manner that it could not be retrieved and returned to the estate of the ward, for the facts show that the identical bond is still in possession of the bank.

Under such circumstances as here confronted the Vanderburgh Probate Court, it had the inherent power, of its own motion, to set aside the two orders in question, if erroneous, to ignore them if void, and enter an order requiring the bank to return the ward's bond into the possession of the guardian where it belongs. *Clymer* v. *State ex rel. Hein* (1915), 59 Ind. App. 364, 109 N. E. 431. If this were accomplished there would be no liability upon Howey's bond as guardian.

Where the evidence in a case is in the form of an agreed stipulation of facts and there seems to be no reason for another trial in the lower court, this court may remand the cause, with instructions as to the nature of the judgment to be entered. *City of Jeffersonville* v. *The Stream Ferryboat Co.* (1870), 35 Ind. 19.

We agree with that portion of the judgment of the lower court holding the two orders of the Vanderburgh Probate Court void.

The judgment is reversed and the court is instructed to enter an order and judgment against the bank, requiring it to return the ward's bond to the possession of the guardian, and to account to the guardian for all interest if any collected on said bond, and retained by it during the time that it has had said bond in its possession. The court is further instructed to enter an order requiring appellee bank to pay all court costs accrued or to accrue in the lower court and in this court incident to this proceeding.

Judgment accordingly.