E. T. SCHULER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51237, 54775, 63736.   Promulgated November 23, 1933.

*W. S. Pritchard, Esq.*, for the petitioner.
*De Witt M. Evans, Esq.*, for the respondent.

416

OPINION.

LANSDON: The respondent applied section 115 (a) of the Revenue Act of 1928 (sec. 201 (a), Act of 1924 and 1926) to the facts in petitioner's transactions with his corporation, and held that under its provision the disputed payments constituted taxable dividends. This provision reads as follows:

(a) *Definition of dividend.*—The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnngs or profits accumulated after February 28, 1913.

The petitioner concedes that he received the payments as set forth in our findings, but contends that he received them as agent of the Coosa Land Co., and that they were all reinvested, or otherwise expended in the interest of that corporation. He has furnished us no records of investments made or details of expenditures, from which we may determine the ultimate disposal of the disputed funds, and whether or not, if invested, he acted within the scope of agency, if any, and for the benefit of his principal.

We are convinced that the Coosa Land Co. was a one man corporation, and, for all practical purposes, the *alter ego* of the petitioner. He seems to have dealt with its affairs with a free hand, and without advice, consent, or restraint from its board of directors or other stockholders. In this situation, although such powers are not expressly given him, we are inclined to recognize his general powers to deal with the corporation's funds and invest them largely as he may see fit, so long as it is shown that they are, in fact, invested for the corporation, whose separate identity is recognized, and not commingled with his own in such a way as to amount to an appropriation. When used in connection with agency, the term "investment" has a highly legal significance. It means the laying out of money in such a manner as to produce revenue, or to purchase income-producing property. *Una v. Dodd*, 39 N.J. Eq. 173; *People v. Utica Insurance*, 15 Johns. 392; *Niel v. Beach*, 92 Pa. 226; *New England Mutual Life v. Phillips*, 141 Mass. 535; *Savings Bank v. Barrett*, 126 Cal. 413; 50 Pac. 914.

The answers to the questions here raised are functions of the Board which are not satisfied by expressions of a witness' opinion or con-

clusions, however honest they may be. The petitioner has assumed to answer these questions for us instead of giving the facts from which we may find the answer. We cannot accept the petitioner's naked statements as proof that he made the investments he claims to have made for his company; or, from them, find how he disposed of the controverted funds. *J. M. Lyon*, 1 B.T.A. 378; *Pleasant Valley Ranch*, 2 B.T.A. 335; *Seymour Mfg. Co.*, 19 B.T.A. 1280; *Williams* v. *Commissioner*, 44 Fed. (2d) 467.

The petitioner refers to the fact that his stockholding in the Coosa Land Co. was of but one share and that no dividends were declared by the corporation in the years here involved and argues (1) that that corporation was at no time under his control; or (2), if so, that his ratable share in such distribution would have been nominal only. Although we are convinced that the petitioner's dominance over the corporation was sole and complete to the extent that he could, and probably did, use it in transactions wholly his own, wherein he took losses and absorbed profits without interference from the other stockholders and without formal corporate records being kept, we are of opinion that the question of corporate regularity is of no importance to his taxable status as the actual recipient of the disputed funds, if he did so receive and retain them, as the respondent found. Clearly the purpose of the statute above quoted was to make taxable all corporation profits earned since February 28, 1913, when permanently separated from surplus and delivered to a "stockholder", whether legally distributed or not. *Lincoln Nat. Bank, Executor*, 23 B.T.A. 1304; *Christopher* v. *Burnet*, 55 Fed. (2d) 527.

The petitioner received the payments in dispute and in his audit the respondent has held that they constituted income to him and were taxable as dividends under the law quoted. This holding is presumed to be correct unless the petitioner shows that the respondent committed error in his conclusion. This the petitioner has failed to do and we accordingly approve the respondent's conclusion. *Leo G. Hadley*, 6 B.T.A. 1031; affd., 36 Fed. (2d) 543; *Lincoln Nat. Bank, Executor, supra.*

The taxpayer concedes and the record shows that he received taxable income in 1925 which he neglected to report as required by law. In this situation it was mandatory on the respondent under section 1003 of the Revenue Act of 1924 to impose a delinquency penalty and assess and collect the same. *Clarence C. Smith*, 4 B.T.A. 514; *John B. Nordholt*, 4 B.T.A. 509; *Eagle Piece Dye Works*, 10 B.T.A. 1360; *John T. Sline*, 9 B.T.A. 1222; *American Milk Products Corp.* v. *United States*, 41 Fed. (2d) 966.

*Decision will be entered for the respondent.*